IN RE MCKINNEY, ALLEGED MENTALLY ILL.

(No. 82AP-633—Decided March 31, 1983.)

*T. H. Elsass Co., L.P.A., Mr. Tobias H. Elsass, Messrs. Bailey, Houfek & Hoover* and *Mr. Douglas E. Hoover,* for appellant Leroy M. McKinney.

*Mr. Anthony J. Celebrezze, Jr.,* attorney general, and *Mr. J. Michael Evans,* for appellee Central Ohio Psychiatric Hospital.

WHITESIDE, P.J. This appeal was taken on behalf of the appellant, Leroy M. McKinney, from an order of the Probate Division of the Franklin County Court of Common Pleas finding him to be a mentally ill person subject to hospitalization pursuant to R.C. 5122.15(H) and committing him to the Timothy B. Moritz Forensic Unit. Two assignments of error have been raised in support of this appeal, as follows:

"I. The judgment entry ordering the hospitalization of Leroy McKinney as a mentally ill person is against the manifest weight of the evidence and contrary to law.

"II. The application of the order of commitment of Leroy McKinney, a person found incompetent to stand trial, is a denial of due process of law and a denial of equal protection of the law."

R.C. 5122.15(H) provides in part that the court may order commitment if it "after a hearing for continued commitment finds clear and convincing evidence that the respondent is a mentally ill person subject to hospitalization by court order." What constitutes a "mentally ill

person subject to hospitalization by court order" is defined by R.C. 5122.01(B) to include "a mentally ill person who, because of his illness: * * * (2) Represents a substantial risk of physical harm to others as manifested by evidence of recent homicidal or other violent behavior * * *."

There can be no doubt but that appellant represents a substantial risk of physical harm to others since there is indication that he has committed murder, several rapes and arson on numerous occasions, but has been found not competent to stand trial with respect to any of these crimes. Since at least some of the arsons were committed only shortly before the hearing, the behavior was sufficiently recent to meet the statutory definition. In addition, every expert witness who testified agreed that appellant is dangerous and represents a danger to others.

Despite the overwhelming evidence that appellant is dangerous, appellant contends that he is not subject to commitment pursuant to R.C. 5122.15(H) because he is not mentally ill. Appellant's contention is supported by the expert opinion of almost every expert who testified at the hearing. The trial court found to the effect that the opinions expressed by the various experts were predicated upon a probable misunderstanding of the statutory definition of what constitutes a "mentally ill person." The psychiatrist and psychologist who testified attempted to place a hypertechnical psychiatric definition upon each of the various words utilized in the statutory definition of mental illness. Despite their stated opinions to the contrary, almost every expert gave descriptive testimony concerning appellant, which clearly and unequivocally places him within the statutory definition of "mental illness," which is defined by R.C. 5122.01(A), as follows:

" 'Mental illness' means a substantial disorder of thought, mood, perception, orientation, or memory that grossly impairs judgment, behavior, capacity to recognize reality, or ability to meet the ordinary demands of life."

In part, the misconception of the expert witnesses resulted from a belief that mental illness, as defined by the statute, cannot be the result of mental retardation but must directly result from psychosis. One expert in describing appellant stated in part:

"* * * His judgment as I noted is poor. He's impulsive. He's unable to differentiate right from wrong, and in my conversations with him, he displayed a complete lack of guilt or remorse with any of his prior offenses."

While finding it difficult to classify appellant as mentally ill, this expert continued, "* * * I think that perhaps that definition is a little too narrow because his judgment is terrible. I do think he's totally unequipped to meet the demands of every day living." This expert also indicated that appellant "is fraught with emotional problems." This expert further indicated that he felt that appellant suffers from "lack of impulse control," but not a psychosis, stating further:

"* * * I think the impulse in this particular instance deals with the acting out of various fantasies, thoughts, and desires in which he is not able to differentiate what is socially acceptable and what is socially unacceptable. He just acts out his particular feelings without any particular thought of the consequences or the impact it has on the rights of other people."

A clinical psychologist testified as to his diagnosis of appellant that:

"It's primarily a personality disorder. It used to be called sociopathic or psychopathic personality, but they don't use those terms any longer. It's more of an antisocial personality disorder."

This psychologist further indicated he felt that appellant suffered from pyromania, which the psychologist felt was a mental illness but did not fall within the statutory definition thereof.

Another psychiatrist expert, who also felt defendant was competent to stand trial "the same as any other first or second grader," described appellant as follows:

"His personality set up as through diagnosis is personality diagnosis, mentally retarded, and he is antisocial person [sic]. * * * He is not at the present time mentally ill, but he has antisocial behavior and mentally retarded behavior going on."

Another psychiatric expert who agreed that, among other things, appellant has a disorder called pedophilia, insisted that appellant was not mentally ill apparently because his various disorders are related to his mild mental retardation. His opinion was explained in part by professional gobbledegook as follows:

"Well, those processes are obviously pathological. They are processes of a mind which fails to function rationally, but it is the professional belief that those results, those actions, are the result of impulse rather than a disorder of thought."

He had previously stated that appellant "* * * reaches conclusions guided by impulse, rather than thinking, such as fire setting for example, or the gross sexual acts which we described." While insisting that appellant's judgment is not impaired within the statutory definition, this expert stated:

"* * * his judgment like the incidents on the record indicate fails. It is the result of insufficient control as a consequence of all processes in arriving at a conclusion and judgment about things because apparently impulse and inability to control the impulse and inability to call in restraints which are ordinarily used by the averagely intelligent person are not there, and it comes out that he exhibits poor judgment."

The record is replete with this type of reasoning with respect to the various statutory factors in the definition of "mental illness" and presents clear examples of the misconceptions of the experts concerning the statutory definition.

First, although the experts all confuse the statutory definition with "psychosis," most of them repeatedly referred to appellant as having disorders, which is the primary foundation for the statutory definition of "mental illness," in that the first requirement is that there be a "disorder" which is substantial. Some of the experts referred to the disorder as being an impulse. However, the fact that it is an impulse makes it no less a "disorder" within the statutory definition. Nor does the fact that one is controlled by impulse, rather than rational thinking, mean that the disorder is not one of "thought" within the statutory definition, as the experts suggested.

The experts were apparently using some type of technical professional definition for the ordinary language of the statute. Instead, the proper test is the meaning that the words convey to the ordinarily prudent person of reasonable understanding and intelligence. As defined in Webster's Third New International Dictionary (1961 Ed.), "thought" can mean "the act or process of thinking," "mental concentration or ideas as distinguished from sense perceptions or emotions," "the ability to think logically," or "use of the ability to think logically."

Similarly, the word "mood" is defined as "a conscious subjective state of mind," "a particular state of mind predisposing to action," "a prevailing attitude," or "a distinctive atmosphere or emotional context." It is also described as "a comprehensive term for any state of mind in which one emotion or desire or set of them is ascendant." "Judgment" within the context used in the statute is defined as "mental or intellectual process of forming an opinion or evaluation by discerning and comparing," or "the power or ability to decide on the basis of evidence."

Without further analysis, it is quite evident that the collective testimony of all the experts describes a substantial

disorder of thought, mood and judgment when these terms are considered in light of their ordinary meaning, the manner in which they are used in the statute, rather than in light of some hypertechnical, psychiatric definition. As we noted, it makes no difference whether the disorder is caused by mental retardation or some type of organic illness, insofar as the statutory definition is concerned. If there be a substantial disorder of thought, mood or description that grossly impairs judgment, behavior, or ability to meet ordinary demands of life, the condition is a mental illness under the statute, irrespective as to whether it is considered an illness by psychiatric experts. Perhaps this is the "hangup" of the experts in this case since they are unwilling to consider anything that they do not professionally recognize as an illness as being a mental illness within the definition of the statute, even though the language of the statute clearly demands that this be the case. If a substantial disorder of thought, mood, perception, orientation or memory that grossly impairs judgment, behavior or ability to meet the ordinary demands of life is the result of mental retardation, it nevertheless is a "mental illness" within the definition of R.C. 5122.01(A).

Rather than being against the manifest weight of the evidence, the overwhelming weight of the evidence supports the finding of the trial court. The first assignment of error is not well-taken.

In considering the first assignment of error, we recognize that appellant contends that there was insufficient evidence that he in fact was the perpetrator of the crimes in question and that, because of his limited mental capacity, his admission that he committed the various crimes should be given little, if any, weight. While perhaps this is true of some of the crimes, there is independent evidence of others. At least, there was sufficient evidence to permit a finding that there was clear and convincing evidence that appellant represents a substantial risk of physical harm to others. We also note that appellant contends that the acts were not of sufficiently recent origin to permit confinement under this section. However, the statute requires that the substantial risk be "manifested by evidence of recent homicidal or other violent behavior * * * or other evidence of present dangerousness." Even though some of the acts of violence were several years old, there was adequate, if not overwhelming, evidence that appellant is no less dangerous now than he was several years ago when these acts were committed. This leads to the second assignment of error, wherein appellant contends that his due process rights were violated because he has not been enabled to stand trial upon these crimes because he is incompetent, yet he is being incarcerated because he has committed them. If this creates an unconstitutional situation, the unconstitutionality must lie in the denial of a trial upon the criminal charges, not in the context of this case. Due process does not require that one who has been found to represent a danger to others be released and allowed to continue to exercise the violent behavior toward others until he is finally caught in the act by someone not a victim of his acts and who is able to testify concerning them. The statute here is totally unlike that in *Jackson* v. *Indiana* (1972), 406 U.S. 715, since the same standards for commitment are set forth in R.C. Chapter 5122 regardless of whether appellant had been competent to stand trial.

Thus, under the circumstances of this case, the fact that appellant has been found incompetent to stand trial is not the basis for his commitment. Rather, the basis for the commitment is the standard set forth in R.C. Chapter 5122. Appellant concedes that there is no statutory differentiation predicated upon the finding of incompetency to stand trial. However, he contends that, admitting testimony of the violent acts which were the predicate for the criminal charges, violates due process. We find this to be without merit. Ap-

282

pellant also contends that the trial court expanded the definition of "mental illness" to establish a basis for commitment solely because appellant was incompetent to stand trial for the violent acts. We find no basis for this contention, inasmuch as the trial court properly applied the statute as we have noted above. There is no differentiation of the standard, either as set forth in the statute or as applied by the trial court between those persons who have been charged with a crime and found incompetent to stand trial and those who have never been charged with a crime. The second assignment of error is not well-taken.

For the foregoing reasons, both assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas, Probate Division, is affirmed.

*Judgment affirmed.*

REILLY and NORRIS, JJ., concur.