STERBLING, N.K.A. BERRY, APPELLEE AND CROSS-APPELLANT, *v.* STERBLING, APPELLANT AND CROSS-APPELLEE.

(No. CA86-08-054 — Decided February 17, 1987.)

*John K. Daggett,* for Susan K. Sterbling, n.k.a. Susan K. Berry.
*Jeffrey S. Schwartz,* for Mark K. Sterbling.

*Per Curiam.* This cause came on to be heard upon an appeal from the Court of Common Pleas of Clermont County.

On November 6, 1979, a decree of dissolution was filed in the Clermont County Court of Common Pleas, ending the marriage of Mark K. Sterbling and Susan K. Sterbling. A separation agreement incorporated into the decree granted, among other things, custody of the couple's only child, Christina, born April 26, 1978, to Susan. Mark was awarded reasonable visitation rights with the child. The

next six years, as reflected in the transcript of docket and journal entries, were marked by a continuing animosity between the parties, at times escalated by both parties' filing motions to increase or decrease child support and to modify visitation rights.

In October 1985, Susan, who had remarried, moved from Highland Heights, Kentucky, to Centerville, Ohio. The relocation was the result of Susan's husband's receiving a new job. The move significantly increased the travel time and distance involved in transporting Christina to and from Mark's home in Cincinnati, Ohio, for visitation.

On November 6, 1985, the parties prepared and filed an agreed entry which ostensibly settled their pending differences on the issues of support and visitation. The entry provided, in part, that:

"The parties shall each pay one half of all unreimbursed medical, optical, dental, orthodontic, and prescription expenses for the minor child of the parties, which expenses are not otherwise covered or reimbursed through insurance."

The entry further established a specific visitation schedule for Mark during weekends, holidays and summer vacations, and also provided for weekly telephone visitation with the child. The entry was signed by the trial court, the parties and their attorneys.

Within a week, Mark filed a motion which alleged that Susan had interfered with his weekend and telephone visitation rights. The motion asked that Susan be held in contempt for violating the November 6 entry and further requested that Mark be granted increased visitation with his daughter. Susan responded by filing her own motion in which she alleged that Mark had failed to pay one half of the expenses required to send Christina to a clinical psychologist for evaluation and treatment.

These motions were heard by a referee who issued a report on April 1, 1986. The referee advised against any changes in the visitation schedule but did recommend that Mark be permitted to make up missed visitations on holidays and weekends. The referee, in response to another request by Susan, refused to order Mark to submit to counseling as a prerequisite to retaining his visitation rights, but encouraged counseling to help to develop a better relationship with the child. The referee also recommended that the costs of psychological treatment for Christina were not subject to reimbursement by Mark. Finally, the referee recommended that Susan share responsibility for Christina's visitation transportation and ordered her to pick the child up at Mark's residence upon the conclusion of each visit.

Susan timely filed objections to the referee's report. The trial court reviewed a transcript of the testimony presented to the referee and heard arguments regarding Susan's objections. In a decision dated June 23, 1986, the trial court overruled all of Susan's objections except for the one pertaining to the expenses for Christina's psychological counseling. The court determined that such treatment qualified as a medical expense for which Mark should pay one half of the cost not reimbursed by insurance. A judgment entry, reflecting the court's decision, was journalized on July 23, 1986. Mark timely appealed the judgment entry and Susan then cross-appealed the same entry.

Mark's sole assignment of error is that the trial court erred by finding that the expenses incurred for Christina's psychological treatment and counseling qualified as medical expenses under the November 6, 1985 entry. He argues that the parties did not contemplate the inclusion of psychological treatment when they

agreed to share their daughter's medical expenses.

Susan took Christina to Dr. Richard Daniels, a clinical psychologist, after the child repeatedly displayed certain behavioral disorders upon returning from visits with Mark. These behavioral problems were manifested by excessive restlessness and anxiety, nightmares, nail biting, and a marked deterioration in the child's school performance. Daniels testified that these behavioral problems were the result of "post-divorce, inter-parent conflict" — a problem which Daniels described as a continuation of the parents' disputes following the divorce. While Daniels stated that this type of behavior is not uncommon in the early stages of a divorce setting, the conflict between the parties in the case at bar lasted well beyond the usual adjustment period normally following a divorce. The continuing conflict between the parents with their daughter caught in the middle was having an adverse effect upon the child. According to Daniels, Christina perceived Mark as an unsupporting or unapproving adult in her life.

Neither party has cited any case law to this court in support of their respective positions on this issue. Mark has attempted to distinguish medical care from psychological care on the basis of a Revised Code section. See R.C. 4732.01(B) and (C). We note that the parties filed an *agreed entry* in which they agreed to each pay one half of their daughter's medical expenses. The entry was drafted and approved by the parties and their attorneys and the particular section in question clearly reflects the parties' intent to protect their daughter's health in all respects.

We reject Mark's argument that "psychological treatment" cannot be included within the term "medical treatment." Medicine is the art and science of dealing with the prevention, cure and alleviation of diseases and the preservation and restoration of health. It is a science not limited to the treatment and care of physical or bodily ills, but one which also includes the care of the patient's mental health and the prevention or alleviation of mental illnesses. It makes no difference whether the attending specialist is a psychologist or a psychiatrist who is also a physician; the method used in the diagnosis and prognosis of the patient is the same. Both are equally qualified in determining whether a patient suffers from a mental illness. See *In re McKinney* (1983), 8 Ohio App. 3d 278, 8 OBR 371, 456 N.E. 2d 1348; R.C. 5122.01(E) and (I).

We find that the term "medical expenses" as used herein covers all expenses and treatment for the child's health and well-being, whether physical or mental. This is especially so where, as in the case at bar, there is support for a finding that both parties, by their continued squabbling, bear the responsibility for the child's problems requiring such care.

Mark's assignment of error is not well-taken and is overruled. We note, however, that Daniels testified on Susan's behalf and strongly advised against an increase in Mark's visitation rights. Inasmuch as Daniels was a witness for Susan, we hold that Mark is only required to pay one half of the expenses directly related to the treatment and care of Christina. Susan is solely responsible for paying Daniels' charges to appear as a witness.

The first assignment of error in Susan's cross-appeal claims that the trial court erred by not ordering Mark to undergo counseling in order to maintain his visitation rights. At the hearing before the referee, Daniels opined that both parties should undergo therapy with Christina and that a good relationship between father and daughter would only be ac-

complished through such therapy. Daniels further advised against an increase in visitation until Mark's relationship with his daughter improved.

We have previously held that the trial court has considerable discretion in determining the visitation rights of a parent who is deprived of the care and custody of his or her child. *Lathrop* v. *Lathrop* (1982), 5 Ohio App. 3d 240, 5 OBR 526, 451 N.E. 2d 546; R.C. 3109.05(B). The court can grant and formulate such visitation rights as are in the best interests of the child. See *Welsh* v. *Laffey* (1984), 16 Ohio App. 3d 110, 16 OBR 117, 474 N.E. 2d 681. A noncustodial parent's right of visitation is a natural right and should be denied only under extraordinary circumstances, which would include, among other things, a showing that the visitation would harm the child. *Pettry* v. *Pettry* (1984), 20 Ohio App. 3d 350, 20 OBR 454, 486 N.E. 2d 213. The burden of proof in this regard is on the party contesting the visitation privileges. *Id.*

Daniels testified that he believed therapy was necessary to improve Mark's relationship with his daughter. Daniels acknowledged, however, that he had never met or interviewed Mark, but based his conclusions solely upon information he had received from Susan and the child. While therapy was recommended, Daniels did not state that all visitation should be terminated unless Mark received treatment. However, Daniels steadfastly advised against any *increase* in visitation unless Mark received counseling and therapy.

The court's decision in regards to visitation must be unreasonable, arbitrary or unconscionable in order to constitute an abuse of discretion. *Lathrop* v. *Lathrop, supra.* Given the facts and circumstances herein, we find no abuse of discretion by the trial court in refusing to make Mark's

visitation rights contingent upon his receiving psychological counseling. Susan's first assignment of error on the cross-appeal is therefore overruled.

For her second assignment of error, Susan claims that the trial court erred in ordering her to share in the cost and responsibility of transporting Christina to and from Mark's home for visitation. Susan's argument is primarily based upon economic considerations. Because of her family's relocation to Centerville, Susan was forced to give up her part-time employment in Cincinnati and currently has no source of income. Mark, on the other hand, is gainfully employed and is capable of providing both transportation and paying the expenses necessary for visitation. In addition, Susan claims that she suffers from "night vision" and can only drive during daylight hours, making it difficult, if not impossible, to fulfill her obligation to transport Christina for visitation.

As with the previous assignment of error, we find no abuse of discretion by the trial court in ordering Susan to share the transportation expenses and responsibilities associated with visitation. Although Susan may have surrendered her employment by moving to Centerville, we find it difficult to accept her argument that she is without any source of income. The move was for economic reasons, *i.e.*, Susan's husband's job, and it is rather incomprehensible that she does not receive some stipend from her husband if she is in fact not working. Nor is it unreasonable for her to assume some responsibility for the increased travel obligations arising from the relocation to Centerville. Having found no abuse of discretion, we accordingly overrule Susan's second assignment of error.

The assignments of error properly before this court having been ruled upon as heretofore set forth, it is the

order of this court that the judgment or final order herein appealed from be, and the same hereby is, affirmed.

*Judgment affirmed.*

KOEHLER, P.J., JONES and HENDRICKSON, JJ., concur.