OPINION
Roger Sullivan appeals from the order of the Montgomery County Common Pleas Court committing him to Twin Valley Psychiatric Hospital pursuant to the court's determination that Sullivan was incompetent to stand trial. We previously determined that this was a final appealable order.
Sullivan was indicted on May 13, 1997, by the Montgomery County Grand Jury on one count of forcible rape under O.R.C. § 2907.02(A)(1)(b) and two counts of gross sexual imposition under O.R.C. § 2907.05(A)(4), each involving children under the age of thirteen. On June 5, 1997, Sullivan entered a plea of Not Guilty and Not Guilty by Reason of Insanity. On the same day, Sullivan's attorney filed a motion requesting a sanity and competency evaluation of Sullivan.
On June 11, 1997, the court ordered Sullivan to undergo a mental examination at the Forensic Psychiatry Center for Western Ohio, pursuant to O.R.C. §§ 2945.39 and 2945.371. On October 21, 1997, the court ordered a second opinion as to Sullivan's competency. The examinations were performed by Dr. Kim Stookey and Dr. Susan Dyer, respectively, each of whom are licensed clinical psychologists.
Both psychologists testified on June 18, 1998 that Sullivan is a fifty year old mildly mentally retarded individual who does not suffer from any mental illness. Dr. Stookey testified that there was no substantial probability that Sullivan would ever be restored to competency for trial purposes. (Tr. 13).
On cross-examination Dr. Stookey stated that Sullivan did not suffer from a disorder that substantially impaired his mood nor a disability that substantially impaired his ability to perceive reality. She acknowledged that Sullivan suffered from a disability that substantially impaired his memory for detail and this impaired his ability to meet the ordinary demands of life. Finally, she stated appellant's history suggested he represented a substantial risk to others. (Tr. 16).
Dr. Dyer testified that Sullivan also had a number of functional limitations which make him more impaired than his IQ would indicate. (Tr. 19). Dr. Dyer did not explain what functional limitations Sullivan exhibited. She testified she did not believe Sullivan could be restored to competency in the foreseeable future. She stated that Sullivan's retardation grossly impaired his judgment and his ability to conform his behavior to societal norms. She stated in light of his history Sullivan presented a substantial risk of harm to others. (Tr. 23-25).
Nick Traylor, a case management specialist for the Montgomery County Board of Retardation, testified he conducted an investigation and he could not find any residential treatment facility for Sullivan's retardation which could assist his restoration to competency.
Sullivan moved to dismiss the criminal charges against him pursuant to Jackson v. Indiana (1972), 406 U.S. 715, wherein the United States Supreme Court held that a person charged by the State with a criminal offense who is committed solely on account of his incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will obtain that capacity in the foreseeable future. If it is determined that this is not the case, then the State must institute the customary civil commitment proceedings that would be required to commit indefinitely any other citizen, or release the defendant.
Sullivan contended in the trial court that R.C. 2945.38, as amended by Senate Bill 285, was unconstitutional as applied to him as the legislation violated his rights to equal protection, due process, and speedy trial as guaranteed by the United States Constitution. He also contended the legislation as amended violates the prohibition against the cruel and unusual punishment provision of the Eighth Amendment of the United States Constitution.
The State in response argued that Senate Bill 285 provides the defendant with substantial safeguards equivalent, if not identical, to the protections provided to those persons civilly committed and Senate Bill 285 meets the requirements of due process by providing for hearings, evaluations and other options during the time which a defendant would be held for treatment under the statute, that the defendant tolled the speedy trial clock by raising the issue of competency; and lastly, that treatment under Senate Bill 285 does not amount to cruel and unjust punishment because defendant raised the issue of competency and treatment is not incarceration, even when involuntary.
In overruling Sullivan's dismissal motion, the trial court stated in pertinent part:
 The Court finds that the statute analyzed in Jackson v. Indiana and the statutes in question in the present case are distinguishable. The statute in Jackson subjected defendants to indefinite institutionalization whereas the present statute merely orders defendants to undergo treatment for one year. If the defendant is found incompetent to stand trial after that one-year treatment, the Court may initiate civil commitment proceedings for the Defendant or can order the Defendant to be committed for a further specific period of time only upon clear and convincing evidence that the Defendant committed the offenses in question. Although the statutes in Jackson and this case are thus distinguishable, the Court still finds that under the Jackson holding, if the application of R.C. §§ 2945.38 and 2945.39 to the Defendant in this case would result in less procedural or substantive protections than those provided under the civil commitment statutes, whether R.C. § 5122 or § 5123, the Court must find that the Defendant's equal protection rights would be violated. The Court, however, does not find such substantially different results in this case.
 As discussed above, under R.C. § 2945.38, the Defendant could be subject to a one-year commitment merely based on his incompetency to stand trial for the crimes with which he is charged. The Court further agrees that if it is found by clear and convincing evidence that he committed the crimes charged, he could potentially be committed for a period of time equal to the maximum prison term he would have received if convicted of those crimes. However, the Court notes that under either commitment procedure, the Defendant would have to be found to be a "mentally ill individual subject to hospitalization" or a "mentally retarded individual subject to institutionalization" under R.C. §§ 5122.01 to 5123.01.
 In the present case, both examiners ordered by the Court to examine the Defendant's mental condition and his competency to stand trial determined that the Defendant is a "mildly mentally retarded" individual. Under R.C. § 5123.01, a "mentally retarded person subject to institutionalization by court order" means a person eighteen years of age or older who is at least moderately mentally retarded and in relation to whom, because of the person's retardation, either of the following conditions exist:
 (1) the person represents a very substantial risk of physical impairment or injury to self as manifested by evidence that the person is unable to provide for and is not providing for the person's most basic physical needs and that provision for those needs is not available in the community;
 (2) the person needs and is susceptible to significant habitation in an institution. (Emphasis added). The Court agrees that under R.C. Chapter 5123, which applies to mentally retarded individuals, and based on the record in this case, since the Defendant was found to be "mildly" mentally retarded rather than "moderately" mentally retarded, he would not be committed under the guidelines set forth in R.C. § 5123.76. However, the Court agrees, as the State argues, that the Defendant could still be subject to civil commitment under R.C. § 5122.15, which applies to the commitment of mentally ill individuals by the Court. The Court of Appeals for Franklin County has found that "if a substantial disorder of thought, mood, perception, orientation or memory grossly impairs judgment, behavior, capacity to recognize reality or ability to meet the ordinary demands of life, it is a `mental illness' as defined by [T.C. 5122.01(A)], irrespective of whether the disorder is caused by mental retardation or some type of organic illness." In re McKinney (1983), 8 Ohio App.3d 278, 281.
 As in In re McKinney, in the present case, the two Court-ordered examiners both testified at the hearing on this motion as to several of the factors within the definition of "mental illness" under R.C. § 5122.01(A). One examiner, Dr. Stookey, testified that the Defendant suffers from a disorder or condition that substantially impairs his ability to think, his ability to orient himself to reality, his memory, his judgment, his ability to conform his behavior to the standards of society and his ability to meet the ordinary demands of life. Dr. Stookey further testified that she believed the Defendant to be harmful to others. The second examiner, Dr. Dyer, testified that the Defendant's mental retardation impairs his ability to make decisions, his ability to remember things, his judgment and his ability to conform behavior to societal norms. Dr. Dyer also testified that she found the Defendant to pose a risk of harm to others.
 As with the defendant in In re McKinney,
the Court holds that the examiner's findings as to Defendant's disorder of thought, perception, judgment, behavior and capacity to recognize reality or meet the ordinary demands of life brings the Defendant within the definition of "mentally ill" as set forth by R.C. § 5122.01. Further, based on both of the examiner's findings that the Defendant poses a risk of harm to others, the Court finds that the Defendant could meet the standards set forth under R.C. 5122.01(B) for a "mentally ill individual person subject to hospitalization by court order" and thus, the requirements for civil involuntary commitment under R.C. chapter 5122.15. Thus, although the Court finds that the record does not indicate the Defendant would be involuntarily committed as a mentally retarded individual under R.C. § 5123.76, he could be involuntarily committed as a mentally ill individual under R.C. § 5122.15.
 The Court further finds that under either R.C. § 2945.38, as a defendant found incompetent to stand trial, or under R.C. § 5122.15, as a mentally ill individual subject to hospitalization by court order, the Defendant would be subject to involuntary commitment. Further, under R.C. chapter 5122, which relates to mentally ill individuals, the Defendant could be subject to hospitalization for an initial period of nine months and then, an indefinite period of time, subject to a hearing every two years. Under R.C. § 2945.38, the Defendant could be committed for one year and, at a maximum, for an amount of time equal to the maximum prison term he would have received if convicted of the most serious offense with which he was charged. Under R.C. § 5122, the Defendant could seemingly be committed indefinitely. Thus, the Court cannot hold that applying the provisions of amended R.C. §§ 2945.38 or 2945.39 would result in substantially less procedural or substantive protections than applying the civil involuntary commitment procedures under R.C. chapter 5123. As such, the Court cannot hold that applying R.C. § 2945.38 to the Defendant in this case would violate Defendant's equal protection rights under the U.S. Constitution.
Secondly, the trial court held that R.C. 2945.38 as amended did not violate Sullivan's due process rights because the court found the length and nature of the commitment prescribed in R.C.2945.38 met the due process standards of Jackson v. Indiana,supra. Lastly, the trial court found that R.C. 2945.38 as amended violates neither Sullivan's speedy trial rights nor the prohibition against cruel and unusual punishment.
In his first assignment, Sullivan contends the trial court erred in finding that R.C. 2945.38 as amended (Senate Bill 285) does not violate appellant's equal protection rights. Sullivan contends that the present R.C. 2945.38 as amended violates the equal protection clause of the Fourteen Amendment because it subjects him to a less lenient commitment standard as a charged criminal defendant than those committed through the State's civil commitment procedures. In other words, he contends Senate Bill 285's revisions to R.C. 2945.38 now allow for commitment for restoration of a defendant's competency regardless of whether the same individual could be committed pursuant to R.C. Chapter 51. He contends this differing standard is exactly what the Supreme Court in Jackson v. Indiana, supra, prohibited.
Sullivan notes that the evidence established that he was a mildly mentally retarded individual and as such he could not be committed under Chapter 51. He notes that R.C. 5123.01 provides that a mentally retarded person subject to institutionalization by Court Orders means a person eighteen or older who is at least "moderately" mentally retarded. He notes that while he may not be committed civilly he may be committed pursuant to R.C. 2945.38 for a one year period. Sullivan also argues that the release provisions of R.C. 2945.38 are more stringent than for those civilly committed pursuant to Chapter 51.
In his third and fourth assignments, he contends the provisions of R.C. 2945.38 as applied to him violate his speedy trial rights and his protection against cruel and unusual punishment as guaranteed by the U.S. and Ohio Constitutions., Appellant's second assignment of error is dispositive of this appeal. In it, Sullivan argues his due process rights were violated when the trial court committed him to the Twin Valley Psychiatric Hospital for "treatment" of his mild mental retardation pursuant to R.C. 2945.38 despite the uncontroverted evidence that there was no substantial probability that he would become competent to stand trial in the foreseeable future.
The Supreme Court in Jackson v. Indiana, supra, held that a defendant cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain competency in the foreseeable future. If it is determined that he will not, the State must institute civil proceedings applicable to indefinite commitment of those not charged with crime, or release the defendant.
Pursuant to Jackson's requirements, the prior R.C. 2945.38
read as follows:
R.C. 2945.38(B), (C), and (D) provides as follows:
 (B) If the court finds that the defendant is incompetent to stand trial, it shall also make a finding based on the evidence as to whether there is a substantial probability that the defendant will become competent to stand trial within one year, if the defendant is provided with a course of treatment.
 (C) If the court finds that the defendant is incompetent to stand trial and that, even if he is provided with a course of treatment, there is not a substantial probability that he will become competent to stand trial within one year, and it appears to the court, through a review of the report of an examiner under section 2945.371 of the Revised Code or otherwise, that the defendant is mentally ill or mentally retarded, the court may cause an affidavit to be filed in the probate court under section 5122.11 or 5123.71 of the Revised Code alleging that the defendant is a mentally ill person subject to hospitalization by court order or a mentally retarded person subject to institutionalization by court order, as defined in sections 5122.01 and 5123.01 of the Revised Code. When the affidavit is filed, the trial court shall send to the probate court a copy of all written reports of the defendant's mental condition that were prepared pursuant to section 2945.371 of the Revised Code.
 (D) If the court finds that the defendant is incompetent to stand trial and it appears to the court, through a review of the report of an examiner or otherwise, that the defendant is mentally ill or mentally retarded, but that there is a substantial probability he will become competent to stand trial within one year if provided a course of treatment, and the offense is one for which the defendant could be incarcerated, if convicted, it shall order the defendant to undergo treatment at a facility operated by the department of mental health or the department of mental retardation and developmental disabilities, at a facility certified by the department as qualified to treat mental illness or mental retardation, at a public or private community mental health or mental retardation facility, or it may order private treatment by a psychiatrist or other mental health or mental retardation professional. The order may restrict the defendant's freedom of movement, as the court considers necessary. In determining placement alternatives, the court shall consider the dangerousness of the person to himself and others, the need for security, the type of crime involved, and shall order the least restrictive alternative available that is consistent with public safety and treatment goals.
In July 1996, R.C. 2945.38 was amended to provide that a trial court, which found the defendant incompetent to stand trial, could order the defendant to undergo treatment at a state facility for up to a year if he stands charged with an offense of violence that is a felony of the first or second degree. The revised statute removed the former requirement that there be a substantial probability that the defendant will become competent to stand trial within one year if provided a course of treatment.
Justice Blackmun wrote in Jackson that "due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed."
In this case the defendant was committed to an institution by the trial court for an arbitrary period of at least one year despite uncontroverted evidence that there was no probability he would be restored to competency in the foreseeable future. That commitment made pursuant to R.C. 2945.38 and as applied to the defendant violated his due process rights. The appellant's second assignment of error is sustained.
Our resolution of the second assignment renders the other assignments of error moot.
The judgment of the trial court is Reversed and Remanded for further proceedings. The trial court or the prosecutor may file an affidavit in probate court for civil commitment of the defendant in a manner provided in Chapter 5122 or 5123 of the Revised Code. The court may detain the defendant for ten days pending civil commitment. See, R.C. 2945.39.
The judgment of the trial court is Reversed, and this cause is Remanded for further proceedings.
WOLFF, J., and FAIN, J., concur.
Copies mailed to:
Cheryl A. Ross
Anthony F. Comunale
Hon. Adele Riley