OPINION
{¶ 1} Defendant-appellant, Robert Hayman, appeals the decision of the Butler County Common Pleas Court, Domestic Relations Division, regarding child support, spousal support and property division in a divorce action. Plaintiff-appellee, Rhonda Hayman, filed a cross-appeal concerning the award of child custody and visitation. We affirm in part, reverse in part and remand.
 {¶ 2} Robert and Rhonda were married to each other twice. The parties were originally married in 1983 and divorced in 1988. They remarried in 1990. Rhonda filed for the second divorce on June 14, 1999. Two children were born of the marriage. Robert is a podiatrist and owns Cincinnati Foot Care. Rhonda works part time at her children's school.
 {¶ 3} A four-day contested divorce proceeding was held beginning May 3, 2000. A decision was issued on May 25, 2001, and the decree was entered on October 25, 2001. The trial court granted custody of the couple's younger child to Rhonda while granting Robert custody of the elder child. Rhonda was awarded child support, spousal support and a share of Robert's pension fund. Robert appeals the decision of the trial court, and presents three assignments of error. Rhonda cross-appeals presenting two assignments of error. We will address Robert's assignments of error first.
Assignment of Error No. 1
 {¶ 4} "The Trial Court Erred To The Prejudice Of Defendant-appellant In Calculating The Award Of Child Support."
 {¶ 5} Robert maintains that the trial court incorrectly determined his income for child support purposes. He maintains that no evidence was presented during the trial to support the amount.
 {¶ 6} A trial court's decision regarding a child support obligation is reviewed under an abuse of discretion standard. Booth v.Booth (1989), 44 Ohio St.3d 142, 144. An abuse of discretion implies that the court's attitude is unreasonable, arbitrary or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 7} R.C. 3119.01(C), which defines income for purposes of child support calculations, states in pertinent part:
 {¶ 8} "`Income' means either of the following:
 {¶ 9} "For a parent who is employed to full capacity, the gross income of the parent;
 {¶ 10} "`Gross income' means, ***, the total of all earned and unearned income from all sources during a calendar year, whether or not the income is taxable, and includes, income from salaries, wages, overtime pay, and bonuses ***; commission; royalties; tips; rents; dividends; *** and all sources of income. `Gross income' includes *** self-generated income; and potential cash flow from any source.
 {¶ 11} "`Self-generated income' means gross receipts received by a parent from self-employment, proprietorship of a business, *** or closely held corporation, and rents minus ordinary and necessary expenses incurred by the parent in generating the gross receipts. `Self-generated income' includes expense reimbursements or in-kind payments received by a parent from self-employment, the operation of a business, or rents, including, but not limited to, company cars, free housing, reimbursed meals, and other benefits, if the reimbursements are significant and reduce personal living expenses."
 {¶ 12} "When a corporate proprietorship is involved in a child-support case, the court has a duty to carefully examine the evidence of corporate expenses and deductions as related to possible personal income." Sizemore v. Sizemore (1991), 77 Ohio App.3d 733, 738. A review of all circumstances must be conducted "to determine if the individual proprietor has taken or concealed anything of value from his corporation which should be added to his personal income." Id. at 739. "The possibility of withdrawal of personal benefits from a closely held corporation for living expenses or other personal use requires sharp scrutiny of all available records to prevent avoidance of child support." Id.
 {¶ 13} The trial court determined Robert's income to be $350,000 for child support purposes. We note that the trial court cited to the parties' earlier 1989 divorce record listing Robert's income as $350,000. However, as the record stands today, we find no other evidence presented at trial to support a finding of Robert's income as being $350,000. Therefore, the trial court abused its discretion when determining Robert's income for child support purposes. As such, Robert's first assignment of error is sustained.
Assignment of Error No. 2
 {¶ 14} "The Trial Court Erred To The Prejudice Of Defendant-Appellant In Calculating The Award Of Spousal Support."
 {¶ 15} Robert contends that the trial court incorrectly determined his income for spousal support purposes. He maintains that no evidence was presented during the trial to support the amount.
 {¶ 16} A review of a trial court's decision as to spousal support is limited to a determination of whether the court abused its discretion. Bowen v. Bowen (1999), 132 Ohio App.3d 616, 626. In order to find an abuse of discretion, it must be determined that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore, 5 Ohio St.3d at 219.
 {¶ 17} Pursuant to R.C. 3105.18(C)(1), a trial court must consider various factors to ensure that the support is appropriate and reasonable. These factors include:
 {¶ 18} "(a) The income of the parties ***;
 {¶ 19} "(b) The relative earning abilities of the parties;
 {¶ 20} "(c) The ages and the physical, mental, and emotional conditions of the parties;
 {¶ 21} "(d) The retirement benefits of the parties;
 {¶ 22} "(e) The duration of the marriage;
 {¶ 23} "(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;
 {¶ 24} "(g) The standard of living of the parties established during the marriage;
 {¶ 25} "(h) The relative extent of education of the parties;
 {¶ 26} "(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
 {¶ 27} "(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;
 {¶ 28} "(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;
 {¶ 29} "(l) The tax consequences, for each party, of an award of spousal support;
 {¶ 30} "(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;
 {¶ 31} "(n) Any other factor that the court expressly finds to be relevant and equitable."
 {¶ 32} In the present case, the trial court found that Robert earns $350,000 annually. As previously noted, given the current record, we find no other evidence presented at trial to support a finding of Robert's income as being $350,000.
 {¶ 33} Although income of the parties is only one factor listed under R.C. 3105.18(C)(1), we find that the trial court abused its discretion where an unsupported income determination of one party is considered when determining spousal support. As such, Robert's second assignment of error is sustained.
Assignment of Error No. 3
 {¶ 34} "The Trial Court Erred To The Prejudice Of Defendant-Appellant In Ruling That The Increase In Value Of Defendant-Appellant's Pension Plan Was Marital Property."
 {¶ 35} Robert maintains that his pension plan/IRA was separate property and therefore the increase in its value was not marital property. He further maintains that he did not actively participate in its maintenance; therefore, he argues any appreciation was passive, not active income.
 {¶ 36} A trial court has broad discretion in the division of property in divorce cases, and its decision will not be reversed absent an abuse of discretion. Middendorf v. Middendorf, 82 Ohio St.3d 397, 401,1998-Ohio-403. A trial court abuses its discretion when it acts in an unreasonable, arbitrary, or unconscionable fashion. Blakemore,5 Ohio St.3d at 219. A trial court does not abuse its discretion when there is some competent, credible evidence to support its decision. Middendorf,82 Ohio St.3d at 401.
 {¶ 37} The trial court found that a portion of Robert's pension plan/IRA was marital property. "Marital property" includes "all income and appreciation on separate property, due to the labor, monetary, or in-kind contribution of either or both of the spouses that occurred during the marriage." R.C. 3105.171(A)(3)(a)(iii). As such, any increase in the value of separate property due to either spouse's efforts is marital property. Middendorf, 82 Ohio St.3d at syllabus.
 {¶ 38} When Robert and Rhonda married the second time, he had $253,912 in his account. When Rhonda filed for divorce, Robert had $1,692,000 in his pension plan/IRA. Pursuant to R.C.3105.171(A)(6)(a),[1] the trial court found the $253,912 to be separate property and not subject to division. However, the trial court found that the balance of the account was the result of Robert's effort and therefore marital property subject to division.
 {¶ 39} Robert maintains that he did not provide a vital or significant role in the appreciation of his account during his marriage. The trial court noted that Robert's accountant, Stephen Fish,[2]
testified that Robert's account was not discretionary. Fish testified that he spoke with Robert before buying or selling any securities. Fish further testified that Robert initiated these discussions about 50% of the time. Finally, when asked during the trial whether Robert actively participated in the management of the account, Fish replied, "Yes." Robert admitted during cross-examination that Fish had called him up at times "with something he plans to do."
 {¶ 40} Given the testimony presented, the trial court did not abuse its discretion when finding that as a result of Robert "actively participated in the management" of his account, it was a marital asset. Robert's third assignment of error is overruled.
 {¶ 41} In conclusion, with regards to Robert's three assignments of error, we sustain the first and second, overrule the third, and remand the matter for further proceedings regarding child and spousal support.
Assignment of Error No. 1 on Rhonda's Cross-Appeal
 {¶ 42} "The Trial Court Erred To The Prejudice Of Appellee/ Cross-Appellant By Denying Her Parental Rights With Regard To Her Minor Son Tyler Hayman."
 {¶ 43} Rhonda maintains that the trial court erred in awarding custody of the parties' teenage son, Tyler, to Robert. She argues that the decision is not supported by competent credible evidence and the order is not in the best interest of the child.
 {¶ 44} A trial judge has wide latitude in considering all the evidence before it, and such a decision must not be reversed absent an abuse of discretion. Davis v. Flickinger, 77 Ohio St.3d 415, 418,1997-Ohio-260. The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. Blakemore,5 Ohio St.3d at 219.
 {¶ 45} The trial court must follow the procedure outlined in R.C.3109.04. The trial court's primary concern is a child's best interest when making an initial allocation of parental rights and responsibilities. R.C. 3109.04(B)(1). Therefore, the trial court must consider all relevant factors related to the children's best interest, including the following factors specified by R.C. 3109.04(F)(1):
 {¶ 46} "(a) The wishes of the child's parents regarding the child's care;
 {¶ 47} "(b) If the court has interviewed the child in chambers *** regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;
 {¶ 48} "(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;
 {¶ 49} "(d) The child's adjustment to the child's home, school, and community;
 {¶ 50} "(e) The mental and physical health of all persons involved in the situation;
 {¶ 51} "(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;
 {¶ 52} "(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;
 {¶ 53} "(h) Whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child ***;
 {¶ 54} "(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;
 {¶ 55} "(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state."
 {¶ 56} In the case sub judice, Robert called the parties' teenage child, Tyler, as a witness. During his testimony, Tyler related his wishes to reside with Robert. Rhonda contends that Robert improperly influenced Tyler's decision by taking him on two skiing trips to Colorado, buying him a new dirt bike, computer, and building a home theater in the basement. She further asserts that the trial court did not consider all of the factors set forth in R.C. 3109.04(F)(1).
 {¶ 57} Rhonda's contention is without merit. During the course of the trial, the trial court heard testimony as to the parties' respective parenting techniques, Tyler's reluctance to visit Rhonda, and Tyler's alleged behavior problems. The trial court succinctly reasoned and found in its decision that "Mr. and Mrs. Hayman have very different perspectives regarding parenting. They do not agree regarding discipline and permissible activities for their children. Because of the severity of their differences, this is one of the few cases which the Court does not believe that shared parenting is either feasible or in the best interest of the children. Although this court has reservations about the extent to which Mr. Hayman has involved Tyler in the divorce, the Court believed that it is in the best interest of Tyler that Mr. Hayman be named residential parent and legal custodian. Tyler is a 16-year-old boy who adamantly does not want to reside with his mother, and there are some indications that his mother is unable to control Tyler's conduct."
 {¶ 58} After a thorough review of the record, we find that the trial court did not abuse its discretion in naming Robert as the residential parent and legal guardian of Tyler. Rhonda's first assignment of error on cross-appeal is overruled.
Assignment of Error No. 2 on Rhonda's Cross-Appeal
 {¶ 59} "The Trial Court Erred To The Prejudice Of Appellee/ Cross-Appellant By Failing To Make An Order Of Visitation With Regard To Her Minor Son Tyler Hayman."
 {¶ 60} Rhonda maintains that the trial court abused its discretion in not providing an order as to visitation with her son, Tyler. She maintains that there is no substantial competent and credible evidence that the lack of visitation order was in the best interest of the child.
 {¶ 61} Pursuant to R.C. 3109.051(A), "If a divorce *** involves a child and if the court has not issued a shared parenting decree, the court shall *** make a just and reasonable order or decree permitting each parent who is not the residential parent to visit the child at the time and under the conditions that the court directs, unless the court determines that it would not be in the best interest of the child to permit that parent to visit the child and includes in the journal its findings of fact and conclusions of law." The trial court should consider those factors delineated in R.C. 3109.051(D) when determining whether to grant visitation rights to a parent. Further, we have previously found that a noncustodial parent's right of visitation is a natural right and should be denied only under extraordinary circumstances. Sterbling v.Sterbling (1987), 35 Ohio App.3d 68, 71.
 {¶ 62} In the present case, the trial court stated, "The Court is making no order with regard to visitation regarding the child, Tyler." By making no order, the trial court was in essence denying Rhonda the right to visitation of Tyler. The trial court did make findings of fact concerning custody, however it made no findings of fact or conclusions of law concerning the best interest of Tyler to support its denial of Rhonda's right of visitation pursuant to R.C. 3109.051(A) and (D). The trial court's failure to state its reasons for its actions makes it difficult for this court to determine whether extraordinary circumstances existed for the trial court to not order visitation.
 {¶ 63} Accordingly, Rhonda's second assignment of error is sustained. The matter is hereby remanded to the trial court to enter its findings of fact and conclusions of law as to its decision.
 {¶ 64} In conclusion, with regards to Rhonda's assignments of error, we overrule the first and sustain the second.
Judgment affirmed in part, reversed in part and remanded.
YOUNG, J., concurs.
WALSH, P.J., dissents without written opinion.
[1] {¶ a} R.C. 3105.171(A)(6)(a)(ii) states in pertinent part:
 {¶ b} "`Separate property' means all real and personal property and any interest in real or personal property that is found by the court to be any of the following: Any real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage."
[2] After reviewing the transcript, we note that the trial court has erroneously referred to Robert's pension plan/IRA accountant as Daniel Hughes, thereby attributing to him the pension plan/IRA accountant's testimony. In actuality, Stephen Fish is the pension plan/IRA accountant and it is his testimony referred to by the trial court in its opinion.