Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
05/20/2022 09:07 AM CDT

SONIA BECHER, APPELLEE, V.
MARK A. BECHER, APPELLANT.
___ N.W.2d ___

Filed February 25, 2022.    No. S-20-737.

1. **Contempt: Appeal and Error.** In a civil contempt proceeding where a party seeks remedial relief for an alleged violation of a court order, an appellate court employs a three-part standard of review in which (1) the trial court's resolution of issues is reviewed de novo, (2) the trial court's factual findings are reviewed for clear error, and (3) the trial court's determinations of whether a party is in contempt and of the sanction to be imposed are reviewed for abuse of discretion.

2. **Judgments: Appeal and Error.** The adoption of a party's proposed findings does not require an appellate court to set aside the deference ordinarily given to the trial judge's factual findings.

3. **Contempt.** Civil contempt proceedings are instituted to preserve and enforce the rights of private parties to a suit when a party fails to comply with a court order made for the benefit of the opposing party.

4. **Contempt: Sentences.** A civil sanction is coercive and remedial; the contemnors carry the keys of their jail cells in their own pockets, because the sentence is conditioned upon continued noncompliance and is subject to mitigation through compliance.

5. **Contempt.** The ability to comply with a contempt order marks a dividing line between civil and criminal contempt.

6. ____. In order for the punishment to retain its civil character, the contemnor must, at the time the sanction is imposed, have the ability to purge the contempt by compliance and either avert punishment or, at any time, bring it to an end.

7. **Contempt: Sentences.** A present inability to comply with a contempt order is a defense, not necessarily to contempt, but to incarceration.

8. **Judgments: Collateral Attack.** When a judgment is attacked in a way other than by proceeding in the original action to have it vacated, reversed, or modified, or by a proceeding in equity to prevent its enforcement, the attack is a collateral attack.

9. ____: ____. Even if erroneous, a judgment is not subject to collateral attack unless it is void, such as would be the case where a judgment is entered without jurisdiction over the person or subject matter.

10. **Judgments: Jurisdiction: Collateral Attack.** A judgment entered by a court which lacks subject matter jurisdiction is void and may be attacked at any time in any proceeding.

11. **Judgments: Contempt.** Refusal to obey a void order or judgment is not contempt.

12. **Actions: Waiver: Appeal and Error.** A decision made at a previous stage of litigation, which could have been challenged in the ensuing appeal but was not, becomes the law of the case; the parties are deemed to have waived the right to challenge that decision.

13. **Contempt: Words and Phrases.** Willful disobedience is an essential element of contempt; "willful" means the violation was committed intentionally, with knowledge that the act violated the court order.

14. **Contempt: Proof: Presumptions.** Outside of statutory procedures imposing a different standard or an evidentiary presumption, the complainant must prove all elements of contempt by clear and convincing evidence.

15. **Equity: Estoppel.** Judicial estoppel is an equitable doctrine that a court invokes at its discretion to protect the integrity of the judicial process.

16. **Estoppel.** The doctrine of judicial estoppel protects the integrity of the judicial process by preventing a party from taking a position inconsistent with one successfully and unequivocally asserted by the same party in a prior proceeding.

17. ____. Judicial estoppel prevents parties from gaining an advantage by taking one position in a proceeding and then switching to a different position when convenient in a later proceeding.

18. ____. Judicial estoppel is to be applied with caution so as to avoid impinging on the truth-seeking function of the court, because the doctrine precludes a contradictory position without examining the truth of either statement.

19. **Judgments: Estoppel: Appeal and Error.** An appellate court reviews a court's application of judicial estoppel to the facts of a case for abuse of discretion and reviews its underlying factual findings for clear error.

20. **Divorce: Final Orders.** A decree is a judgment, and once a decree for dissolution becomes final, its meaning is determined as a matter of law from the four corners of the decree itself.

21. **Judgments: Final Orders: Words and Phrases.** A "judgment" is a court's final consideration and determination of the respective rights and obligations of the parties to an action as those rights and obligations presently exist.

22. **Equity: Judgments: Interest.** A court of equity has discretion to allow or withhold interest as is reasonable and just, except in cases where interest is recoverable as a matter of right.

23. **Courts: Restitution: Contempt.** Through its inherent powers of contempt, a court may order restitution for damages incurred as a result of failure to comply with a past order.

24. **Courts: Jurisdiction: Divorce: Contempt.** A court's continuing jurisdiction over a dissolution decree includes the power to provide equitable relief in a contempt proceeding.

25. **Courts: Equity.** Where a situation exists which is contrary to the principles of equity and which can be redressed within the scope of judicial action, a court of equity will devise a remedy to meet the situation.

26. **Contempt: Costs: Attorney Fees.** Costs, including reasonable attorney fees, can be awarded in a contempt proceeding when there has been a finding of contempt.

27. **Contempt: Attorney Fees.** Attorney fees in contempt cases fall under a court's inherent power to do all things necessary to enforce its judgment.

28. **Attorney Fees: Appeal and Error.** A trial court's decision awarding or denying attorney fees will be upheld on appeal absent an abuse of discretion.

29. **Judgments: Words and Phrases.** A judicial abuse of discretion requires that the reasons or rulings of the trial court be clearly untenable insofar as they unfairly deprive a litigant of a substantial right and a just result.

Appeal from the District Court for Lancaster County: KEVIN R. McMANAMAN, Judge. Affirmed as modified.

Adam E. Astley, of Astley Putnam, P.C., L.L.O., for appellant.

Sally A. Rasmussen, of Mattson Ricketts Law Firm, for appellee.

HEAVICAN, C.J., MILLER-LERMAN, CASSEL, STACY, FUNKE, PAPIK, and FREUDENBERG, JJ.

PAPIK, J.

Mark A. Becher appeals a district court order that found him in contempt for failure to pay various expenses following his divorce from Sonia Becher. He claims that he should not be required to pay those expenses, the associated interest, or

attorney fees. We modify the provisions of the contempt order pertaining to certain expenses but otherwise affirm.

## I. BACKGROUND

Mark and Sonia were married in 1991. They had three children together and amassed considerable property. The dissolution of their marriage in 2015 has resulted in a great deal of litigation, including multiple contempt proceedings and three prior appeals. See, *Becher v. Becher*, 302 Neb. 720, 925 N.W.2d 67 (2019); *Becher v. Becher*, 299 Neb. 206, 908 N.W.2d 12 (2018); *Becher v. Becher*, 24 Neb. App. 726, 897 N.W.2d 866 (2017), *reversed in part* 299 Neb. 206, 908 N.W.2d 12 (2018).

Mark now appeals a contempt order, entered on September 10, 2020. This order arose from Sonia's motion for citation of contempt filed January 16, 2017; her supplemental motion filed July 3, 2019; and the district court's corresponding orders to show cause. On appeal, Mark challenges aspects of the contempt order pertaining to the children's 2016 medical expenses, the children's future medical expenses, real estate taxes, costs associated with a wilderness therapy program for one of the children, interest, and Sonia's attorney fees.

## II. ASSIGNMENTS OF ERROR

Mark assigns, consolidated and restated, that the district court erred in (1) finding him in contempt for failure to pay for a portion of (a) the children's 2016 medical expenses, (b) real estate taxes, and (c) the wilderness therapy program, and requiring him to pay for his share of those expenses as part of the purge plan; (2) requiring Mark to pay for his share of the children's future medical expenses as part of the purge plan; (3) assessing interest; and (4) ordering Mark to pay Sonia's attorney fees.

## III. STANDARD OF REVIEW

[1] In a civil contempt proceeding where a party seeks remedial relief for an alleged violation of a court order,

an appellate court employs a three-part standard of review in which (1) the trial court's resolution of issues of law is reviewed de novo, (2) the trial court's factual findings are reviewed for clear error, and (3) the trial court's determinations of whether a party is in contempt and of the sanction to be imposed are reviewed for abuse of discretion. *Vyhlidal v. Vyhlidal*, 309 Neb. 376, 960 N.W.2d 309 (2021).

Mark argues that in this case we should deviate from the foregoing standard of review and not give the trial court's factual findings the deference our clear error standard would ordinarily require. Such deference is not appropriate, he asserts, because the district court's contempt order mirrors a proposed order submitted by Sonia's counsel.

[2] We have no direct proof of the purported word-for-word match between a proposed order and the district court's order: Mark acknowledges Sonia's proposed order is not in our record. Undeterred by the absence of the order in the record, Mark claims the "tone" of the district court's order makes it "readily apparent" that Sonia's counsel must have drafted it. Brief for appellant at 20. We need not, however, spend time assessing Mark's claim. Even if the district court adopted a proposed contempt order submitted by Sonia's counsel in its entirety, we would not depart from our usual standard of review. Findings prepared by counsel and adopted verbatim by the trial judge are formally the judge's, and the adoption of a party's proposed findings does not require an appellate court to set aside the deference ordinarily given to the trial judge's factual findings. See *Wayne L. Ryan Revocable Trust v. Ryan*, 308 Neb. 851, 957 N.W.2d 481 (2021). See, also, *Anderson v. Bessemer City*, 470 U.S. 564, 572, 105 S. Ct. 1504, 84 L. Ed. 2d 518 (1985) ("even when the trial judge adopts proposed findings verbatim, the findings are those of the court and may be reversed only if clearly erroneous").

Other standards of review pertaining to specific assignments of error are discussed in the analysis section below.

## IV. ANALYSIS

### 1. Children's 2016 Medical Expenses and Future Medical Expenses

#### (a) Factual Background

The dissolution decree ordered Mark to pay 90 percent of the children's medical expenses that were not reimbursed by insurance, after the first $480 per year, within 10 days of proper presentation of the bill.

Sonia's 2017 motion for citation of contempt and her 2019 supplemental motion alleged Mark had not paid his share of the children's 2016 medical expenses presented to him by Sonia.

At trial, Sonia put on evidence that Mark had not reimbursed her $864.76 for his share of the children's 2016 medical expenses. The parties later stipulated, however, that Mark had paid $886.05 into the district court on March 15, 2017, just prior to the first day of trial. The district court's receipt described the payment as "Judgment (General)." Mark testified that he paid this sum for the children's 2016 medical expenses.

In its order entered September 10, 2020, the district court found Mark in contempt of the provisions of the decree requiring him to pay the 2016 medical expenses within 10 days of proper presentation by Sonia. Addressing Mark's 2017 payment of $886.05 into the court, the district court observed that neither the amount nor the description of that payment tied it to the 2016 medical expenses, which had not been reduced to a general judgment, and that therefore, the evidence did not support a finding that Mark paid them. The district court continued that even if this eventual payment was intended as payment of the 2016 medical expenses, it did not prevent a finding of contempt. Citing an earlier order finding Mark in contempt, entered on May 11, 2016, the district court characterized Mark's failure to pay his share of the children's 2016 health care expenses pursuant to the terms of the decree as part of an established pattern of recalcitrance. It then stated:

Because the [contempt order entered May 11, 2016,] was
not sufficient to persuade [Mark] to pay his share of the
children's medical expenses on time, or at all, additional
language in the purge plan will obligate [Mark] to pay all
future medical expenses within 10 days of proper presen-
tation until the youngest child turns 19. Hopefully, this
will eradicate the need to file serial contempt actions for
non-payment of the children's health care expenses.

The district court committed Mark to a sentence of 60 days
in jail, which sentence would remain suspended so long as
Mark complied with the purge plan. The purge plan required
Mark to pay the 2016 health care expenses of $864.76 within
10 days, plus interest. Also as part of the purge plan, the dis-
trict court ordered, "From the date of this order until the last
of the parties' minor children reaches the age of 19, Mark . . .
shall pay his share of the children's future health care expenses
within 10 days of proper presentation of the same by [Sonia],
as ordered in the parties' decree." The parties' youngest child
was born in 2008.

### (b) Analysis

#### (i) 2016 Medical Expenses

Given the evidence and the parties' stipulation, Mark asserts
that the district court erred in finding him in contempt for fail-
ing to pay the children's 2016 medical expenses and not credit-
ing him with the $886.05 he paid toward those expenses. Sonia
concedes that Mark should be given credit for the $886.05
that the parties stipulated he paid into the district court in
2017 and that the provision of the purge plan ordering Mark
to pay $864.76 for 2016 medical expenses should be elimi-
nated, but she contends that no other modifications of the order
are warranted.

[3] We accept Sonia's concession that Mark should be given
credit for the payment the parties stipulated he paid into the
district court and that the provision of the purge plan order-
ing Mark to pay those medical expenses should be eliminated.

As for Sonia's contention that Mark should still be held in contempt for his late payment of the children's 2016 medical expenses, we disagree. Civil contempt proceedings are instituted to preserve and enforce the rights of private parties to a suit when a party fails to comply with a court order made for the benefit of the opposing party. *Johnson v. Johnson*, 308 Neb. 623, 956 N.W.2d 261 (2021). When Mark paid the 2016 medical expenses, however late, there was nothing more that could be done to fulfill the requirements of the decree. The subsequent citation of contempt, therefore, could not serve the purpose of the civil contempt remedy and was an abuse of discretion. Accordingly, we modify the contempt order to strike paragraph 17, finding Mark in contempt for failing to pay those expenses, and paragraph 44(b), incorporating those expenses into the purge plan, as well as the reference to paragraph 44(b) in paragraph 45.

### (ii) Future Medical Expenses

Mark also argues that the district court erred in requiring him to pay his share of the children's future medical expenses as part of the purge plan. Mark argues that the provision does not allow consideration of his present ability to comply or factors that might lead to noncompliance.

We conclude it was an abuse of discretion to require Mark to pay his share of future medical expenses as part of the purge plan. Although we recognize the district court's intent to craft a purge plan that would "preserve and enforce" Sonia's rights under the decree, see *Johnson*, 308 Neb. at 630, 956 N.W.2d at 266, the future medical provision otherwise conflicts with the principles of civil contempt.

As we read the district court's contempt order, it would require that Mark be committed to jail if, at any time before the last of the parties' children turned 19 years of age, he failed to pay any medical expense for which he was responsible under the decree within 10 days of Sonia's presenting him with the expense. As we will explain, this arrangement runs contrary to our civil contempt jurisprudence.

[4-7] A civil sanction is coercive and remedial; the contemnors carry the keys of their jail cells in their own pockets, because the sentence is conditioned upon continued noncompliance and is subject to mitigation through compliance. *Sickler v. Sickler*, 293 Neb. 521, 878 N.W.2d 549 (2016). The ability to comply with a contempt order marks a dividing line between civil and criminal contempt. *Id.* In order for the punishment to retain its civil character, the contemnor must, at the time the sanction is imposed, have the ability to purge the contempt by compliance and either avert punishment or, at any time, bring it to an end. *Id.* A present inability to comply with a contempt order is a defense, not necessarily to contempt, but to incarceration. *Id.*

The order suspending Mark's sentence on the condition that he comply with the decree's medical expense provisions in the future creates the possibility that Mark could be committed to jail even if he lacks the ability to pay the expenses. At the time the purge plan was entered, the district court could not know the extent of the future medical expenses or Mark's future resources to pay them. Mark also did not have the ability to purge the contempt at the time the sanction was imposed because future medical expenses had not yet arisen.

Further, we do not believe the future medical expense provision could lawfully accomplish what the district court intended. In its contempt order, the district court stated that it would include the future medical expense provision as part of the purge plan in the hopes that it would eliminate the need for future contempt proceedings to address nonpayment of the children's medical expenses. To the extent the district court envisioned that its contempt order would result in the automatic issuance of a commitment order in the event Mark failed to pay medical expenses as required by the decree in the future without any additional hearing, that would violate due process. See, *Cokonougher v. Cokonougher*, 543 So. 2d 460 (Fla. App. 1989); *Tucker v. Tucker*, 10 Ohio App. 3d 251, 252, 461 N.E.2d 1337, 1339 (1983) ("insofar as [a purge plan] purports

to regulate future conduct, it simply amounts to the court's reaffirmation of [the dissolution decree] and can have no effect since any effort to punish a future violation of the [decree] would require new notice, hearing, and determination"). If, on the other hand, Mark is afforded due process in the form of an additional hearing regarding any future alleged violation of the decree, the district court's aim of avoiding successive proceedings will not be achieved.

We understand the district court's impulse to ensure that Mark complies with the medical expense provisions of the decree in the future. However, the district court's ordinary powers of contempt are sufficient to accomplish that purpose: If Mark willfully refuses to comply with the decree in the future, future contempt actions will be available. This may result in the "serial contempt actions" that the district court sought to avoid, but additional proceedings would be necessary in order for the sanction to retain its civil character and afford due process.

To the extent that the district court found Mark in contempt and imposed a sanction related to future health care expenses, it abused its discretion. We modify the contempt order to strike paragraph 18, referring to future medical expenses, and paragraph 44(e), the future medical expenses provision of the purge plan.

## 2. Appellate Record Dispute

Before we take up Mark's other assignments of error, we stop to briefly address a dispute between the parties regarding the materials that we may consider in resolving those assignments of error.

The parties pursued contempt actions against each other during the same timeframe. The trial that preceded the September 2020 contempt order from which Mark now appeals was continued multiple times. While the trial was pending, Mark initiated his own contempt proceedings and a related request for declaratory relief, resulting in hearings and orders.

Although some of the issues in the parties' separate contempt proceedings were related, the matters were addressed at separate hearings.

For the current appeal, Mark's praecipe for transcript and praecipe for a bill of exceptions requested pleadings, orders, and evidence from the contempt proceedings he had initiated, in addition to materials from Sonia's contempt proceedings that produced the order now appealed. Those materials from Mark's contempt proceedings appear in our transcript and bill of exceptions, and Mark claims that they support his arguments regarding the real estate taxes and the expenses for the wilderness therapy program.

Sonia's appellate brief contends we may not consider materials from Mark's contempt proceedings, and Sonia filed a "Motion to Strike Documents Outside the Trial Court Record" simultaneously with her brief. We overruled Sonia's motion and reserved for plenary submission the question of what materials may be considered in this appeal.

We now determine that we need not resolve the question of whether the disputed materials are properly before us. We find that even if the disputed materials are considered, Mark's assignments of error regarding the real estate taxes and the expenses for the wilderness therapy program lack merit.

### 3. Real Estate Taxes

#### (a) Factual Background

The December 2015 dissolution decree classified, valued, and divided the parties' substantial commercial and residential real estate holdings. Sonia subsequently sought an order holding Mark in contempt for his refusal to pay real estate taxes that accrued during the marriage for certain properties.

In an order entered on May 11, 2016, the district court did not hold Mark in contempt for refusing to pay real estate taxes, but stated that Mark could be held in contempt if he failed to pay his portion of the taxes within 60 days:

The unpaid real estate taxes prior to December 18, 2015[,] is a marital debt to be paid equally by the parties. The evidence in this contempt hearing showed the following taxes to be unpaid: 2015 Sun Valley taxes of $2191.04; 2015 Mini Storage taxes of $4768.82; 2015 Dollar General taxes of $13,208.08; and last half 2014 Dollar General taxes of $6,997.08. The taxes are prorated to December 1, 2015. 92% of the year the taxes are a marital obligation. [Mark] owes 50% of 92% of the total unpaid real estate taxes for 2015 and 50% of the total unpaid real estate taxes for 2014. However, since [Sonia] has demanded in her contempt proceedings that [Mark] pay all the unpaid taxes, she has not succeeded in establishing his contempt [in] these [proceedings]. [Mark's] failure to pay these taxes prior to this date is not contempt. The same will not be the result if these taxes remain unpaid 60 days from now. But that is for another day. [Mark] is not in contempt on these taxes at this time.

This order was later appealed on other grounds, and we affirmed. See *Becher v. Becher*, 299 Neb. 206, 908 N.W.2d 12 (2018).

Sonia subsequently demanded that Mark pay his share of the foregoing taxes and interest and penalties, all of which Sonia had paid. When Mark did not pay, she filed the motion for citation of contempt that gave rise to this appeal. At trial in Sonia's contempt proceedings, Sonia presented evidence that supported her demand upon Mark for payment. Mark testified that he was aware of the May 11, 2016, order; that he had read the order; and that he understood it obligated him to pay the sums it listed. However, he took the position that he did not pay those sums because he was confused by guidance from one of his attorneys and his contact at the courthouse did not inform him that he owed them. Mark also claimed that Sonia had not paid him certain sums as ordered by the district court and that to offset that amount, he should not be held in contempt for refraining from paying Sonia sums that he was ordered to pay by the May 11, 2016, order.

The district court precluded Mark from adducing evidence in support of the setoff defense. However, it allowed him to present evidence about the issue solely for the purpose of considering whether such evidence mitigated against a "willful" disobedience of the court's May 2016 contempt order.

In its order entered September 10, 2020, the district court found Mark in contempt of the May 11, 2016, order for failing to pay the real estate taxes itemized in that order within 60 days. It found that Mark had willfully disregarded the order because he was aware of it, had read it, and understood that it obligated him to pay the real estate taxes listed. The district court's purge plan directed Mark to pay within 10 days the sum Sonia had sought in her demand—$13,359.52—plus interest.

(b) Analysis

In this appeal, Mark assigns that the district court erred in finding him in contempt for not paying his share of the real estate taxes recited in the May 2016 order and for requiring him, in the purge plan, to pay the amount Sonia demanded in connection with the real estate taxes. Mark suggests that the May 2016 order did not explicitly direct him to pay a share of the disputed real estate taxes. Alternatively, Mark contends that the district court violated equitable principles in enforcing the May 2016 order through contempt.

We begin by dispensing with Mark's suggestion that the May 2016 order did not specifically direct him to pay a share of the now-disputed real estate taxes. The order stated:

> [Sonia] has demanded in her contempt proceedings that [Mark] pay all the unpaid taxes, [but] she has not succeeded in establishing his contempt [in] these [proceedings]. [Mark's] failure to pay these taxes prior to this date is not contempt. The same will not be the result if these taxes remain unpaid 60 days from now.

Although the district court's articulation could have been more direct, the foregoing language unmistakably ordered Mark to pay a portion of the disputed real estate taxes.

Mark next asserts that the May 2016 order's treatment of the real estate taxes was "wrong" and that consequently, principles of equity required the district court to construe it as creating no obligations at all. Brief for appellant at 29. But even assuming, without deciding, that the order was erroneous, it does not necessarily mean that the district court erred in enforcing the order in a contempt proceeding.

[8-11] When a judgment is attacked in a way other than by a proceeding in the original action to have it vacated, reversed, or modified, or by a proceeding in equity to prevent its enforcement, the attack is a collateral attack. *Fetherkile v. Fetherkile*, 299 Neb. 76, 907 N.W.2d 275 (2018). Even if erroneous, a judgment is not subject to collateral attack unless it is void, such as would be the case where a judgment is entered without jurisdiction over the person or subject matter. *Id.* A judgment entered by a court which lacks subject matter jurisdiction is void and may be attacked at any time in any proceeding. *Davis v. Moats*, 308 Neb. 757, 956 N.W.2d 682 (2021). And refusal to obey a void order or judgment is not contempt. *Id.*

Although Mark argues that the district court should not have enforced the May 2016 order, he does not argue that the May 2016 order is void, and we do not believe it is. Without further explanation or citations to authority, Mark appears to take the position the order was "wrong" because of "Nebraska's prohibition on modifying property judgments." Brief for appellant at 29. This appears to be a reference to our holding that a property division in a dissolution of marriage decree from which no appeal is taken is not subject to modification and ordinarily will not thereafter be vacated or modified as to such property provisions in the absence of fraud or gross inequity. See *Davis v. Davis*, 265 Neb. 790, 660 N.W.2d 162 (2003). But because our law allows modification of property division under some circumstances, it follows that a modification could result in, at most, an erroneous order, not a void one.

[12] Mark's attempt to collaterally attack the May 2016 order is also precluded by the law-of-the-case doctrine. Although

the May 2016 order was appealed, the real estate tax provisions were not challenged, and we affirmed. See *Becher v. Becher*, 299 Neb. 206, 908 N.W.2d 12 (2018). A decision made at a previous stage of litigation, which could have been challenged in the ensuing appeal but was not, becomes the law of the case; the parties are deemed to have waived the right to challenge that decision. *Pinnacle Enters. v. City of Papillion*, 302 Neb. 297, 923 N.W.2d 372 (2019). Thus, upon the issuance of our mandate in the earlier appeal, Mark was deemed to have waived any challenges to the May 2016 order, and the district court was not obligated to reconsider whether the May 2016 order was correct in ruling on Sonia's contempt motion.

Mark next claims that it was inequitable to find him in contempt for his failure to pay the real estate taxes in light of his setoff defenses. Again, we disagree. While the court may entertain setoff considerations in fashioning its orders, see *Davis, supra*, it is not up to a party to unilaterally manage what is due and owing under a court's order, especially when the order is clear. See *Jensen v. Jensen*, 275 Neb. 921, 750 N.W.2d 335 (2008) (when overpayments of child support are voluntarily made outside terms of court order, general rule is that no credit is given for those payments, because such credit would be tantamount to allowing one party to unilaterally modify court's order, which could result in deprivation of future support benefits).

Having established that the May 2016 order expressly directed Mark to pay a portion of the real estate taxes recited therein and equitable principles did not preclude the district court from holding Mark in contempt if he failed to pay them, we turn to the only remaining issue, which is whether the district court abused its discretion in holding Mark in contempt for his failure to pay and ordering him in the purge plan to reimburse Sonia as she requested. We conclude that it did not.

[13,14] As we have already observed, civil contempt proceedings are instituted to preserve and enforce the rights of private parties to a suit when a party fails to comply with a

court order made for the benefit of the opposing party. *Sickler v. Sickler*, 293 Neb. 521, 878 N.W.2d 549 (2016). Willful disobedience is an essential element of contempt; "willful" means the violation was committed intentionally, with knowledge that the act violated the court order. *Id.* Outside of statutory procedures imposing a different standard or an evidentiary presumption, the complainant must prove all elements of contempt by clear and convincing evidence. *Id.*

Sonia presented clear and convincing evidence that Mark willfully disobeyed the real estate tax provisions of an enforceable order made for her benefit. Mark admitted at trial that he was aware of the May 2016 order, that he had read the order, and that he understood it obligated him to pay the sums it listed. Yet, for reasons of his own, he chose not to do so. Under these circumstances, we cannot say it was an abuse of discretion for the district court to find Mark in contempt and order him in the purge plan to reimburse Sonia for the amount she paid for real estate taxes due to Mark's failure to pay.

### 4. Wilderness Therapy Program

#### (a) Factual Background

Mark and Sonia pursued contempt proceedings against each other, both of which concerned their daughter's participation in a wilderness therapy program in the summer of 2018. Mark initiated his contempt proceeding against Sonia that summer. The decree required the parties to "promptly inform and consult with each other" about "any medical problem" and "immediately notify the other" of "an illness or injury" involving the minor children. Mark alleged in his contempt proceedings that Sonia violated these provisions of the decree when she did not inform him before placing the daughter in the wilderness therapy program.

During those contempt proceedings, in July 2018, the following exchange took place between Sonia and her counsel:

> Q [A]t the time you made the decision to place [your daughter] at the [wilderness therapy program], was she ill?

A No, she wasn't sick.

Q Was she injured?

A No.

Q Was she suffering from any new medical problem?

A No.

. . . .

Q Do you believe that you were obligated to involve and consult [Mark] prior to placing or making the decision to place [your daughter] at the [wilderness therapy program]?

A No.

In September 2018, Sonia also submitted written closing arguments in the contempt proceedings initiated by Mark in which she stated that she should not be held in contempt because the daughter "did not have a medical problem, and she was not ill or injured."

Later, in July 2019, Sonia initiated contempt proceedings against Mark, claiming that Mark should be held in contempt for refusing to pay his share of the cost of the wilderness therapy program, which she contended was a medical expense under the decree. As referenced above, the dissolution decree ordered: "Mark shall provide health insurance for the children if available through an employer or organization to which he belongs. Mark shall pay 90% and Sonia shall pay 10% of all medical, dental, and optical expenses for the child not reimbursed by insurance after the first $480.00 per year." The decree ordered reimbursement of medical expenses within 10 days of proper presentation of the bill to the other party. In addressing how the parties shall present medical expenses to each other for payment, the district court ordered: "The parties should continue to use participating providers whenever possible and both parties should agree in advance before having the children treated by someone other than a licensed medical doctor, physical therapist or licensed mental health professional or dentist."

In September 2019, before the trial on the contempt proceedings initiated by Sonia had concluded, the district court

entered an order overruling Mark's motion asking that Sonia be held in contempt and found that Sonia did not violate the decree. The district court's order stated that "[t]he evidence at trial showed that [the daughter] did not have a medical problem, and she was not ill or injured." Whether the district court erred by overruling Mark's contempt motion is not before us in this appeal.

According to the evidence presented at the trial on the contempt proceeding initiated by Sonia, Sonia arranged for the parties' daughter to spend the entire summer of 2018 at the wilderness therapy program, which was located in Utah. The daughter, then age 16, was transported to the wilderness therapy program by a professional escort team. The daughter testified that she would not have gone to the wilderness therapy program voluntarily if escorted by Sonia. Sonia paid the cost of the wilderness therapy program, $51,892.50, in full.

Sonia was allowed to visit the daughter during the wilderness therapy program. She testified that she observed the daughter receive "lots of psychological help." She testified that the daughter received mental health counseling at the wilderness therapy program that was similar to counseling she had received in Nebraska, for which Mark had paid his share.

Sonia testified regarding the nature of the wilderness therapy program. She testified that the daughter received "medical treatment." She testified that the daughter did not have "broken bones . . . so I would not call it medical that way, but she had a broken soul, so it was health." Sonia testified that she sent her daughter to the wilderness therapy program "because she had behavioral problems and I just wanted to send her someplace where they were going to stop her from hurting herself by taking drugs or running away in the middle of the night." At that point, Sonia testified, she "did not realize that this could even be a health issue." Sonia testified that "[l]ater on," she was advised by her counsel to submit the expenses to the health insurer with whom Mark had health insurance for the parties' children. Evidence introduced at trial showed that

the health insurer sent reimbursement checks for the wilderness therapy program totaling $25,378.67 to Mark. A portion of the program was not covered by health insurance, because Mark terminated the policy before the daughter completed the program.

Mark admitted that he received the checks from the health insurer for the wilderness therapy program and that he had not paid those expenses. The "explanation of benefits" documents from the insurer reflecting this reimbursement are from December 2018 and January 2019. Sonia asked Mark to sign the checks over to her, but he did not.

In Sonia's contempt proceedings, the district court rejected Mark's argument that the wilderness therapy program expenses were not "medical expenses" under the decree. The district court found Mark in contempt for not paying 90 percent of the wilderness therapy program expenses and ordered him to pay the expenses as part of the purge plan, plus interest.

### (b) Analysis

On appeal, Mark contends that the district court erred in holding him in contempt for not paying his share for the cost of the wilderness therapy program and in requiring him to pay his share and the associated interest as part of the purge plan. Mark asserts that Sonia was judicially estopped from claiming the wilderness therapy program was a medical expense pursuant to the decree and that even if judicial estoppel does not apply, Sonia's claim should have failed on the merits. For reasons explained below, we reject these arguments.

### (i) Judicial Estoppel

[15-17] Mark argues that the district court erred by not invoking the doctrine of judicial estoppel to preclude Sonia from claiming that the cost of the wilderness therapy program was a medical expense. Judicial estoppel is an equitable doctrine that a court invokes at its discretion to protect the integrity of the judicial process. *Cleaver-Brooks, Inc. v. Twin City Fire Ins. Co.*, 291 Neb. 278, 865 N.W.2d 105 (2015). The

doctrine of judicial estoppel protects the integrity of the judicial process by preventing a party from taking a position inconsistent with one successfully and unequivocally asserted by the same party in a prior proceeding. *Id.* Fundamentally, the intent behind the doctrine of judicial estoppel is to prevent parties from gaining an advantage by taking one position in a proceeding and then switching to a different position when convenient in a later proceeding. *Id.* We have previously quoted one court's explanation that the purpose of the rule is "'to prevent parties from playing fast and loose with the courts.'" *Id.* at 289, 865 N.W.2d at 114, quoting *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355 (3d Cir. 1996).

[18] The judicial estoppel doctrine, however, is to be applied with caution so as to avoid impinging on the truth-seeking function of the court, because the doctrine precludes a contradictory position without examining the truth of either statement. *Cleaver-Brooks, Inc., supra*. We have also held that before a court may apply the judicial estoppel doctrine, "bad faith or an actual intent to mislead on the part of the party asserting inconsistent positions must be demonstrated." *Id.* at 289, 865 N.W.2d at 114-15.

Mark contends that the district court should have applied judicial estoppel to preclude Sonia from taking the position that the costs of the wilderness therapy program were medical expenses. He argues that Sonia took the position in his contempt proceedings that their daughter did not have a "medical problem" about which the decree would have required Sonia to consult with Mark and was successful in persuading the district court to agree. According to Mark, it was inconsistent for Sonia to later take the position that the costs of the wilderness therapy program qualified as "medical expenses" that the decree required Mark to pay.

We do not deny that Mark has a plausible argument that Sonia took inconsistent positions. One must acknowledge that there is, at the very least, some tension between Sonia's claims that the daughter needed to go to the wilderness therapy

program for a reason other than a "medical problem," but that the cost of the wilderness therapy program was nonetheless a medical expense.

But even if Sonia successfully persuaded the court to adopt her position with respect to Mark's contempt motion and then took an inconsistent position with respect to her contempt motion, that alone would not require the district court to apply the judicial estoppel doctrine. As we have noted, in order for the doctrine to be applied, there would also need to be a demonstration of "bad faith or an actual intent to mislead" on Sonia's part. See *Cleaver Brooks, Inc. v. Twin City Fire Ins. Co.*, 291 Neb. 278, 289, 865 N.W.2d 105, 114 (2015). And even if that showing were made, the district court would still retain discretion as to whether to apply the doctrine. See *id.*

On the question of whether there was a demonstration here that Sonia acted with bad faith or had an actual intent to mislead, we find a federal district court case applying Nebraska law instructive. In *Lueders v. Arp*, 321 F. Supp. 3d 968 (D. Neb. 2018), a person involved in two traffic accidents filed lawsuits against parties he claimed were liable for his injuries in the respective accidents. The plaintiff testified in a deposition for the first lawsuit that his injury was not exacerbated by the second accident and that he did not intend to claim any additional injuries. After the first lawsuit was settled, however, the plaintiff filed the second lawsuit, claiming an additional injury for the second accident. The second defendant sought summary judgment, arguing that judicial estoppel precluded the plaintiff from claiming he was injured in the second accident after he previously testified that his injuries were exclusively caused by the first. The federal district court denied summary judgment, finding an absence of conclusive evidence that the plaintiff acted with bad faith or had an actual intent to mislead. It explained that while the evidence might have been consistent with "'playing fast and loose with the courts,'" it would also be consistent with more innocent explanations including "a plaintiff deciding, during the course of

medical evaluation and discovery, that perhaps the causation of his injuries was more complicated than he thought." *Id.* at 976, quoting *Cleaver-Brooks, Inc., supra*.

Like the court in *Lueders*, we do not find the evidence here conclusive as to whether Sonia acted in bad faith or had an actual intent to mislead. The positions Sonia took on the respective contempt motions might have been consistent with "'playing fast and loose with the courts,'" but we think they would also have been consistent with more innocent explanations. See *id.* Perhaps Sonia honestly believed that it was possible to send the daughter to the wilderness therapy program for something other than a "medical problem," but for the wilderness therapy program to nonetheless be a "medical expense." Or perhaps, during the course of the various proceedings, Sonia's views about the nature of the daughter's needs when she was sent to the wilderness therapy program changed. Sonia provided testimony that appeared to allude to such a change in perspective between the time she initially sent the daughter to the wilderness therapy program and "did not realize that this could even be a health issue" and the time of the trial on her contempt proceeding after the expenses for the program had been covered by health insurance.

We also note that Sonia is not the only party that took positions that are arguably inconsistent with respect to the nature of the wilderness therapy program expenses. Although Mark took the position in Sonia's contempt proceeding that the costs of the wilderness therapy program were not medical expenses, he retained payments from his health insurer for those expenses. There is obvious tension between claiming that expenses are not medical in nature and nonetheless retaining reimbursement from a health insurer for those expenses. Moreover, if permitted to retain the payments from the health insurer and not required to reimburse Sonia, Mark would not only have avoided paying the wilderness therapy program expenses, but he would have emerged from the various transactions with a substantial profit.

[19] Faced with inconclusive evidence as to Sonia's subjective motivation and the issues presented by Mark's position summarized above, our standard of review becomes important. We have held that an appellate court reviews a court's application of judicial estoppel to the facts of a case for abuse of discretion and reviews its underlying factual findings for clear error. *TFF, Inc. v. SID No. 59*, 280 Neb. 767, 790 N.W.2d 427 (2010). As the U.S. Court of Appeals for the First Circuit has explained, the subjective element of judicial estoppel is one of the reasons its application is reviewed under a deferential standard:

> [D]eferential review often is appropriate for matters in which the trial court is better positioned . . . to decide the issue in question. Judicial estoppel is such a matter. Determining whether a litigant is playing fast and loose with the courts has a subjective element. Its resolution draws upon the trier's intimate knowledge of the case at bar and his or her first-hand observations of the lawyers and their litigation strategies.

*Alternative System Concepts, Inc. v. Synopsys*, 374 F.3d 23, 31 (1st Cir. 2004) (internal quotation marks and citation omitted).

This is certainly a case in which the district court's knowledge of the parties, their disputes, and their litigation tactics far exceeds ours. The district court was unquestionably in a better position to determine whether Sonia took inconsistent positions in bad faith or with an actual intent to mislead. And having seen and heard the respective contempt proceedings firsthand, the district court was also in a better position to weigh whether, in light of equitable considerations, judicial estoppel should not have been applied to benefit Mark. See *Cleaver-Brooks, Inc. v. Twin City Fire Ins. Co.*, 291 Neb. 278, 865 N.W.2d 105 (2015) (judicial estoppel is equitable doctrine that court invokes at its discretion). See, also, *New Hampshire v. Maine*, 532 U.S. 742, 751, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001) (explaining that application of judicial estoppel does not depend upon "exhaustive formula" and that

"[a]dditional considerations may inform the doctrine's application in specific factual contexts"). Given the foregoing, we cannot say the district court abused its discretion in declining to apply judicial estoppel.

### (ii) Wilderness Therapy Program
### as Medical Expense

Mark claims that, even if his judicial estoppel argument is not successful, the district court erred in finding him in contempt for not paying part of the cost for the wilderness therapy program. Mark does not dispute that the wilderness therapy program offered counseling and behavioral health services, but according to him, the language of the decree's medical expense provision does not require payment for such services.

[20] The parties correctly frame the issue as whether the decree's reference to medical expenses includes the expenses associated with the wilderness therapy program the daughter attended. A decree is a judgment, and once a decree for dissolution becomes final, its meaning is determined as a matter of law from the four corners of the decree itself. See *Braun v. Braun*, 306 Neb. 890, 947 N.W.2d 694 (2020). Because the meaning of "medical expenses" as used in the decree presents a question of law, we reach a conclusion independent of the determination reached by the trial court. See *id.* Our review of the language of the decree leads us to conclude that the district court did not err in classifying the wilderness therapy program expenses as medical expenses for which Mark was partly responsible under the decree.

The language of the dissolution decree contemplated that medical expenses could include mental health services. It made Mark responsible for a significant portion of the children's "medical, dental, and optical expenses" properly presented to him by Sonia. In explaining how the parties shall present expenses to each other for payment, the decree directed the parties to "continue to use participating providers whenever possible and . . . agree in advance before having the children

treated by someone other than a licensed medical doctor, physical therapist or *licensed mental health professional* or dentist." (Emphasis supplied.) Because the language providing a process for the presentation of medical expenses included mental health services, we conclude that those expenses are medical expenses under the decree.

The decree's use of "medical" to encompass mental health treatment is consistent with a widely accepted understanding of that term. As one court has explained:

Medicine is the art and science of dealing with the prevention, cure and alleviation of diseases and the preservation and restoration of health. It is a science not limited to the treatment and care of physical or bodily ills, but one which also includes the care of the patient's mental health and the prevention or alleviation of mental illnesses.

*Sterbling v. Sterbling*, 35 Ohio App. 3d 68, 70, 519 N.E.2d 673, 676 (1987). This understanding of "medical" has been used in Nebraska case law and statutes. See, e.g., Neb. Rev. Stat. §§ 71-8215 (Reissue 2009) and 38-1207 (Reissue 2016) (emergency medical service defined as organization responding to need for medical care "in order to prevent loss of life or aggravation of physiological or psychological illness or injury"); *State v. Vigil*, 283 Neb. 129, 810 N.W.2d 687 (2012) (where individual is alleged to be victim of sexual assault, statements reasonably pertinent to medical diagnosis and treatment of both physical and psychological trauma are admissible under medical diagnosis or treatment hearsay exception). Cases from other jurisdictions interpreting dissolution decrees have also read "medical" expenses in this broad sense. See, *McDonald v. Taylor*, 106 N.C. App. 18, 415 S.E.2d 81 (1992); *Cedergreen v. Cedergreen*, 811 P.2d 784 (Alaska 1991); *Bucy v. Bucy*, 23 Conn. App. 98, 579 A.2d 117 (1990); *Martin v. Martin*, 538 So. 2d 765 (Miss. 1989); *Sulman v. Sulman*, 510 So. 2d 908 (Fla. App. 1987); *Kahn v. Kahn*, 23 Ariz. App. 269, 532 P.2d 541 (1975).

Mark further argues that there was no evidence that the cost of the wilderness therapy program was reasonable or that a less expensive option would have been ineffective. He also claims that Sonia sent the daughter to the wilderness therapy program for her own convenience rather than medical necessity. We find that none of these arguments are relevant to whether the expenses qualified as "medical expenses" under the language of the decree. And because we are not persuaded that the district court erred in determining that the wilderness therapy program expenses were medical expenses under the decree, we conclude that the district court did not abuse its discretion in finding Mark in contempt for failing to pay his share of those costs and in ordering him to do so as part of the purge plan.

## 5. Interest

As described above, the district court found Mark in contempt for disobeying court orders to pay various expenses and ordered Mark to reimburse Sonia for her payment of those expenses as part of the purge plan. Relevant to this section, those expenses included sums paid by Sonia for real estate taxes, the wilderness therapy program expenses, and 2018 orthodontia expenses for one of the children. For each of these categories, the district court ordered Mark to pay "prejudgment interest," accruing from different dates for each expense, with all accrual dates preceding entry of the contempt order. In fixing the interest rate for each item, the district court cited to the "Nebraska Judgment Interest Rate" table distributed by the State Court Administrator and ordered the specific interest rate in effect on the accrual date designated by the district court.

On appeal, Mark asserts that the district court erred in assessing "prejudgment interest" against him. In opposing the "prejudgment interest" awarded, Mark does not challenge the amounts upon which the district court ordered such interest to accrue, the accrual dates, or the interest rates; therefore, we do not analyze the correctness of these determinations. We

confine our analysis to Mark's only argument on this point—that the district court was statutorily prohibited from ordering "prejudgment interest" and that thus, the order must be reversed. As we will explain, the issue is not that simple.

Although the district court stated that it was awarding Sonia "prejudgment interest," Sonia contends that some of the interest it ordered Mark to pay was actually postjudgment interest. As its name suggests, "[p]rejudgment interest is interest due, pursuant to statute, [as interest that accrues] prior to the rendition of a judgment." *First Nat. Bank v. Bolzer*, 221 Neb. 415, 421, 377 N.W.2d 533, 537 (1985). Prejudgment interest ends and postjudgment interest begins to accrue "from the date of entry of judgment until satisfaction of judgment." Neb. Rev. Stat. § 45-103.01 (Reissue 2016). See, Neb. Rev. Stat. § 45-104 (Reissue 2016); *Weyh v. Gottsch*, 303 Neb. 280, 929 N.W.2d 40 (2019).

[21] We agree that the interest the district court ordered Mark to pay on the sums owed for the real estate taxes falls into the category of postjudgment interest. A "judgment" is a court's final consideration and determination of the respective rights and obligations of the parties to an action as those rights and obligations presently exist. *Nichols v. Nichols*, 288 Neb. 339, 847 N.W.2d 307 (2014). See Neb. Rev. Stat. § 25-1301(1) (Cum. Supp. 2020). The court's May 11, 2016, order made such a determination regarding real estate taxes.

In contrast to the interest on the real estate taxes, it is less clear that the interest the district court ordered Mark to pay on the sums he owed for the wilderness therapy program and orthodontia was postjudgment interest. The district court ordered interest for the wilderness therapy program and orthodontia expenses to begin to accrue October 18, 2018, and August 28, respectively, at the postjudgment interest rates in effect on those accrual dates. And while the dissolution decree addressed Mark's general obligations for medical expenses, the final consideration and determination of his obligations for those expenses occurred when the district court entered its

contempt order on September 10, 2020. As we will explain, however, even if the district court ordered the interest to accrue on those sums prior to the judgment, the district court did not necessarily err by doing so.

Mark's position that the district court was statutorily prohibited from ordering interest to accrue prior to the judgment is based on Neb. Rev. Stat. § 45-103.04 (Reissue 2021). That statute provides that "[i]nterest as provided in § 45-103.02 shall not accrue prior to the date of entry of judgment for . . . [a]ny action arising under Chapter 42[.]" § 45-103.04. Mark claims that this statute prohibited an award of prejudgment interest, because "Neb. Rev. Stat. § 42-370 provides the statutory basis for contempt cases in domestic relations matters." Brief for appellant at 34. While we note that this court has long recognized that "[t]he power to punish for contempt is incident to every judicial tribune, derived from its very constitution, without any expressed statutory aid," *Kregel v. Bartling*, 23 Neb. 848, 852, 37 N.W. 668, 670 (1888), we will nonetheless assume for the sake of argument that this action arises under chapter 42 of the Nebraska Revised Statutes. Even with that assumption, the language of § 45-103.04 would only preclude the district court from ordering prejudgment interest pursuant to Neb. Rev. Stat. § 45-103.02 (Reissue 2021). We do not read it to limit a court's equitable powers to order a party to pay interest.

[22-25] Our cases recognize that a court of equity has discretion to allow or withhold interest as is reasonable and just, except in cases where interest is recoverable as a matter of right. *Bowers v. Lens*, 264 Neb. 465, 648 N.W.2d 294 (2002). In addition, contempt proceedings may both compel obedience to orders and administer the remedies to which the court has found the parties to be entitled. *Johnson v. Johnson*, 308 Neb. 623, 956 N.W.2d 261 (2021). Through its inherent powers of contempt, a court may order restitution for damages incurred as a result of failure to comply with a past order. *Becher v. Becher*, 299 Neb. 206, 908 N.W.2d 12 (2018); *Sickler v.*

*Sickler*, 293 Neb. 521, 878 N.W.2d 549 (2016). And a court's continuing jurisdiction over a dissolution decree includes the power to provide equitable relief in a contempt proceeding. *Sickler, supra*. Where a situation exists which is contrary to the principles of equity and which can be redressed within the scope of judicial action, a court of equity will devise a remedy to meet the situation. *Id.*

Under these principles, the district court had discretion to order interest to accrue prior to the date of the contempt order. Considering that the district court ordered the interest to accrue on expenses Mark was obligated to pay and that Sonia was deprived of the use of funds she paid toward those expenses, we find no abuse of discretion.

## 6. Attorney Fees and Expenses

In moving for a citation of contempt, Sonia requested reasonable attorney fees and any other relief deemed equitable by the court. At trial, Sonia presented evidence of the fees and expenses she had incurred in pursuing her contempt action. The district court's contempt order awarded Sonia $7,346.96 for attorney fees and expenses and ordered Mark to pay that sum through the court within 30 days.

On appeal, Mark assigns that the district court erred in ordering him to pay all of Sonia's attorney fees. He does not dispute that Sonia incurred attorney fees and expenses in the amount awarded. Instead, Mark asserts that he argued and acted reasonably in opposing Sonia's efforts to obtain the payments she believed Mark owed to her, and he asks us to reduce the amount of attorney fees awarded to Sonia to the extent that he has prevailed on appeal.

[26-29] Costs, including reasonable attorney fees, can be awarded in a contempt proceeding when there has been a finding of contempt. See *Smeal Fire Apparatus Co. v. Kreikemeier*, 279 Neb. 661, 782 N.W.2d 848 (2010), *disapproved on other grounds, Hossaini v. Vaelizadeh*, 283 Neb. 369, 808 N.W.2d 867 (2012). Attorney fees in contempt cases fall under a

court's inherent power to do all things necessary to enforce its judgment. *Wetovick v. County of Nance*, 279 Neb. 773, 782 N.W.2d 298 (2010). A trial court's decision awarding or denying attorney fees will be upheld on appeal absent an abuse of discretion. *McCullough v. McCullough*, 299 Neb. 719, 910 N.W.2d 515 (2018). A judicial abuse of discretion requires that the reasons or rulings of the trial court be clearly untenable insofar as they unfairly deprive a litigant of a substantial right and a just result. *Id.*

Upon our review of the record, we conclude that the district court's award of attorney fees to Sonia was not clearly untenable. Sonia incurred attorney fees in her contempt action to secure substantial court-ordered payments from Mark, and she prevailed. Our opinion today affirms the district court's ruling, modifying a relatively small portion of its order. We conclude that the district court did not abuse its discretion in its award of attorney fees and expenses to Sonia.

## V. CONCLUSION

We modify the district court's order to delete contempt findings and purge provisions related to the children's 2016 medical expenses and future medical expenses. Finding no merit to Mark's remaining assignments of error, we otherwise affirm.

AFFIRMED AS MODIFIED.

MILLER-LERMAN, J., dissenting in part.

In her successful effort to avoid contempt, Sonia previously and unequivocally asserted that the cost of wilderness camp was not a medical expense and the district court found in its September 26, 2019, order that "[t]he evidence at trial showed that [the daughter] did not have a medical problem . . . ." Sonia is now judicially estopped from claiming the cost is a medical expense, and I would reverse that portion of the September 10, 2020, order to the extent it found Mark in contempt for not paying for the wilderness camp as a medical expense. Accordingly, I respectfully dissent from that portion of the

majority opinion which concluded that Sonia was not judicially estopped from claiming the wilderness camp cost as a medical expense and which affirmed the district court's finding that Mark was in contempt for not paying for the wilderness camp as a medical expense.

Although I recognize there is plenty of animus and blame to go around, I write separately to state that in my view, the course of this litigation offends the integrity of the courts. I recognize that the definition of "medicine" can vary with the context. However, what I find offensive in particular is Sonia's willingness to take convenient positions and play the court accordingly. See *Cleaver-Brooks, Inc. v. Twin City Fire Insurance Co.*, 291 Neb. 278, 865 N.W.2d 105 (2015).

In opposition to Mark's contempt claim to the effect that Sonia failed to consult with him before sending the daughter to wilderness camp, Sonia testified, and repeated in closing argument, that consultation was not necessary because it was not medical treatment. Having been convinced by Sonia, in its September 26, 2019, order, the district court determined that the wilderness camp expense was not medical. Mark accepted this ruling and did not appeal.

But when Sonia later sought reimbursement for the camp fee and the cost of the escort transportation which took the daughter to the wilderness camp at 3 a.m., thus permitting Sonia to take a trip to Spain and denying Mark access to his daughter, and after insurance paid Mark, Sonia conveniently labeled all the foregoing as medical expenses.

Convinced yet again by Sonia, in its 2020 order, the district court ignored the law of the case and Sonia's previously winning position and determined that this time, the expenses were medical and Mark was in contempt for not paying them.

I cannot attribute Sonia's incompatible and inconsistent positions as merely trial strategy or as reassessment of the same facts. They can only be described as an informed decision to mislead. Sonia's conflicting positions are more than

inconsistent, they are an affront to the integrity of the court process. Accordingly, in my view, Sonia should be judicially estopped from asserting the late-breaking claim that the cost of the wilderness camp is medical, and I would reverse the portion of the order which found Mark in contempt predicated thereon.

Freudenberg, J., joins in this dissent.