IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

LESLEY V. LESLEY

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

JUSTIN M. LESLEY, APPELLEE,

V.

PRECIOUS A. LESLEY, APPELLANT.

Filed December 13, 2022.    No. A-22-016.

Appeal from the District Court for Sarpy County: GEORGE A. THOMPSON, Judge. Affirmed.

Precious A. Lesley, pro se.

Justin M. Lesley, pro se.

PIRTLE, Chief Judge, and ARTERBURN and WELCH, Judges.

ARTERBURN, Judge.

INTRODUCTION

Precious A. Lesley appeals from an order of the district court for Sarpy County finding her in willful contempt of a prior court order that required her to sell the home she shared with her former husband, Justin M. Lesley, and return his personal property that remained in her possession. Upon our review of the record, we find that the court did not err in finding Precious to be in willful contempt or in imposing its sentence and purge plan.

BACKGROUND

Justin and Precious were married on May 23, 2015. In October 2019, the district court entered a decree dissolving their marriage. Within the decree, the district court issued the following order:

Each party shall keep the property in each party's possession and shall be responsible for the debts each has incurred, save an[d] except the following:

- 1 -

[Precious] is awarded the family residence located [on] Chandler Street and shall keep [Justin] free and harmless from any liability associated theretofore. Within 90 days, [Precious] shall refinance the residence in her name only. If [Precious] is unable to refinance the property in her name only, the residence shall be sold within 90 days thereafter. Any debt or surplus resulting from the sale of the home shall be divided equally between the parties. . . .

[Precious] shall prepare [Justin's] clothing and the lawnmower for pick up by [Justin] at 6:00 p.m. on Wednesday, October 23, 2019. [Justin] shall be accompanied by a neutral third party for the pick up of the property.

On August 24, 2021, almost 2 years after the decree was entered, Justin filed an application for an order to show cause with the court claiming that Precious had failed to sell the marital home after being unable to refinance the mortgage loan. He also claimed that Precious had never allowed him to retrieve the lawnmower and his clothing in her possession. An order to show cause was issued the next day with a hearing on the matter scheduled for September 24. Precious and Justin attended the hearing in person.

At the start of the September 24, 2021, hearing, Precious informed the court that she had received notice of the hearing only via email. The court then explained that personal service needed to be properly effectuated and asked whether Precious was agreeing to come into court on the application to show cause. Precious responded affirmatively, stating that the matter needed to be settled. The court then explained that incarceration was one of the possible sanctions the court could impose if Precious was found in willful contempt of court and that because of this, the court would appoint her an attorney if she could not afford to hire one. Precious indicated that she was not able to hire an attorney at the time, so the court provided her a financial affidavit to fill out. The hearing then concluded. On September 27, after reviewing Precious' completed financial affidavit, the court overruled her request for court-appointed counsel.

A pretrial hearing was held on October 13, 2021. Both parties appeared at this hearing without counsel. At this hearing, Precious informed the court that she and Justin had not been able to resolve their issues outside of court. An evidentiary hearing was then scheduled for November 5. The court explained to both parties that the evidentiary hearing was their opportunity to present evidence regarding the show cause order.

At the November 5, 2021, evidentiary hearing, both parties again appeared without counsel. The first issue addressed at the hearing was Justin's inability to retrieve the personal property he was awarded in the divorce decree from Precious. In support of his contempt claim, Justin offered into evidence several emails between himself and Precious detailing their negotiations regarding Justin's personal belongings and the sale of the house. Precious offered into evidence additional emails between her and Justin.

Taken together, the email exchanges reveal that Justin initially emailed Precious about picking up his belongings on January 27, 2020. Precious responded that Justin had missed the deadline of October 23, 2019, established by the court in the decree and declined to allow him to pick up his things on January 27, 2020. Approximately a year later, in January 2021, Justin again emailed Precious about when he could pick up his personal property.

At the evidentiary hearing on November 5, 2021, Justin explained that he still had not been offered an opportunity to retrieve his belongings. Precious explained that because Justin did not contact her by October 23, 2019, she threw most of the items away. She had interpreted the divorce decree to mean that it was Justin's responsibility to pick up his belongings by the October 23 deadline. To the contrary, Justin explained that he did not even receive a copy of the divorce decree until October 24. He interpreted that portion of the decree to mean that Precious had to have the items ready for him by that date. Justin requested the court to set a date for him to retrieve his belongings from Precious.

The second issue addressed at the evidentiary hearing was the sale of the marital home. Precious informed the court that she was unable to refinance the house in her name only. In the email exchanges between Justin and Precious, the two disagreed about whether selling the house at that time would result in much value. Precious argued that selling the house would result in a loss, while Justin argued that the home's value had increased since the date of purchase. At the evidentiary hearing, Justin offered into evidence a comparative market analysis of the house completed by a local realty company. Precious offered into evidence a market area sales report from the Sarpy County Assessor.

Other evidence adduced at the hearing revealed that the mortgage on the home was not paid off. In addition to the mortgage, there was a home equity line of credit (HELOC) that had a balance of $17,000 as of the time of the divorce. When Justin moved out of the home in August 2018, Precious began making both the house payment and the HELOC payment. According to Precious, these payments have put a financial strain on her, such that she is not opposed to selling the house. However, Precious said she had been unable to sell the house because she and Justin have disagreed about each other's equity in the home based on their relative contributions. Precious did not want Justin to receive a windfall from a sale due to the current inflated housing prices since she had been the only one contributing to the home since 2018. Justin countered that he did not currently contribute to the house payments because he was not receiving any benefit from living there. He also testified that Precious received the entirety of the proceeds from the HELOC. As such, it had not provided him any benefit. After the parties' concluded their presentation of evidence, the court took the matter under advisement.

In an order dated December 8, 2021, the court found that it was clear from the evidence presented that Precious failed to refinance the marital home or list the home for sale as was ordered in the divorce decree. In addition, the court found that Justin had never received the personal property awarded to him in the divorce decree. The court concluded that Precious' failure to list the marital home for sale constituted willful disobedience of the decree. The court interpreted the decree to have required Precious to prepare Justin's personal items for pick up by October 23, 2019. Having found Justin to be the more credible witness, the court held that because Justin's attempts to retrieve his items were continuously blocked by Precious, she willfully disobeyed the order to return his possessions to him.

As a result of her willful disobedience, the district court found Precious to be in contempt and sentenced her to 30 days in the Sarpy County Jail. However the court devised a purge plan whereby Precious could avoid the imposition of the sentence. Under the purge plan, Precious was required to (1) list the home for sale by December 31, 2021, and (2) return Justin's items of personal property by December 31, 2021. In the alternative, should Precious no longer have the

items, she was required to pay Justin $1,000 by January 31, 2022. The court then found that upon the receipt of an affidavit from Justin that Precious had complied with the purge plan, the court would vacate the 30-day sanction and the compliance hearing would be cancelled.

As a part of its order, the court instructed Justin and Precious to equally divide any proceeds realized from the sale of the marital home, less closing costs. However, if there was a deficit in the sale of the home, the debt was to be Precious' sole obligation. Precious was ordered to appear before the district court on February 4, 2022, for a status hearing regarding her compliance with the purge plan.

Precious appeals from the district court's order here.

## ASSIGNMENTS OF ERROR

Consolidated and restated, Precious assigns as error (1) the court's denial of appointed counsel for the contempt proceedings, (2) that the court lacked jurisdiction to hear the show cause order, (3) that there was insufficient evidence to find her in willful contempt of the decree of dissolution, and (4) that the sanction imposed was punitive.

## STANDARD OF REVIEW

In a civil contempt proceeding where a party seeks remedial relief for an alleged violation of a court order, an appellate court employs a three-part standard of review in which the trial court's (1) resolution of the issues of law is reviewed de novo, (2) factual findings are reviewed for clear error, and (3) determinations of whether a party is in contempt and the sanction to be imposed is reviewed for an abuse of discretion. *Becher v. Becher*, 311 Neb. 1, 970 N.W.2d 472 (2022).

## ANALYSIS

*Denial of Appointed Counsel.*

We begin with Precious' assertion that the district court erred in denying her request for appointed counsel. Although Precious has assigned this issue as error, in the analysis section of her brief, Precious has failed to provide a coherent analytical argument supporting her assertion. Precious' only argument in support of her contention is that "she filed two separate Financial Affidavits showing that her expenses were at or less than her income and the Court granted her request to proceed with appeal in forma pauperis." Brief for appellant at 36. In order to be considered by an appellate court, the party asserting an alleged error must both specifically assign and specifically argue it in the party's initial brief. *Dycus v. Dycus*, 307 Neb. 426, 949 N.W.2d 357 (2020). Where an appellant's brief contains only conclusory assertions unsupported by a coherent analytical argument, the appellant fails to satisfy this requirement. *Id.* Because Precious has not adequately argued her assertion regarding the district court's failure to appoint her with counsel for the contempt proceedings, we do not consider this assignment of error.

*Jurisdiction.*

In her brief on appeal, Precious also alleges that the district court did not have jurisdiction to hear the contempt action because Precious was not personally served with the application to show cause filed by Justin. Generally, under Nebraska law the plaintiff is required to serve a summons upon the defendant in a civil proceeding. See *Burns v. Burns*, 293 Neb. 633, 879 N.W.2d

375 (2016). However, for the purposes of personal jurisdiction, the voluntary appearance of the party is equivalent to receiving service of process. *Id.* A party's participation in the proceedings on any issue other than defenses of lack of jurisdiction over the person, insufficiency of process, or insufficiency of service of process, waives all such issues. *Id.*

Here, Precious arrived at the initial hearing on September 24, 2021. She informed the court that she had not been personally served, but instead had been informed of the hearing through an email notification. The district court asked Precious whether she was "agreeing to come in on this application to show cause." Precious responded affirmatively stating that the "matter need[ed] to be settled." By availing herself of the court, Precious waived any issues with service or personal jurisdiction of the court. Therefore, Precious cannot now challenge whether the court had personal jurisdiction over her.

*Sufficiency of Evidence.*

Precious alleges generally that the evidence presented at the evidentiary hearing was insufficient to support a finding that she was in willful contempt of the divorce decree. In support of her assertion that she should not have been found in willful contempt, Precious makes two distinct arguments. First, Precious argues that the court incorrectly interpreted the divorce decree, and second, argues that the court erred in finding sufficient evidence to support a finding of willful contempt.

Precious challenges the district court's interpretation of the provisions of the divorce decree regarding the sale of the home and the retrieval of Justin's personal belongings. A decree is a judgment, and once a decree for dissolution becomes final, its meaning is determined as a matter of law from the four corners of the decree itself. *Becher v. Becher*, 311 Neb. 1, 970 N.W.2d 472 (2022). The parties' subjective intentions and interpretations of the language or what the court entering the decree intended are irrelevant. *Gomez v. Gomez*, 303 Neb. 539, 930 N.W.2d 515 (2019). Because the interpretation of a provision within a divorce decree is a question of law, we reach a conclusion independent of the determination reached by the district court. *Becher v. Becher, supra.* After our review of the language of the decree, we conclude that the district court did not err in finding that the decree clearly instructed Precious to sell the home if she could not refinance it, and that the decree required Precious to return Justin's items to him.

Precious argues that the provision of the decree requiring the sale of the home was not clear because it did not specify that she was personally responsible for the sale of the home. The language of the divorce decree states that "if [Precious] is unable to refinance the property in her name only, the residence shall be sold within 90 days thereafter." This comes directly after the order awarding her the residence. Reading these two provisions together, it is clear that the decree required Precious, as the person in sole possession of the house, to either refinance the home in her name only, or to facilitate the sale of the home. The district court did not err in finding this provision to be unambiguous.

Precious next argues that the court erred in its interpretation of the divorce decree's provision stating that "[Precious] shall prepare [Justin's] clothing and the lawnmower for pick up by [Justin] at 6:00 p.m. on Wednesday, October 23, 2019." The district court interpreted this provision to instruct Precious to have Justin's items prepared for him by the deadline set. Precious

asserts that the provision was a deadline for Justin to retrieve his belongings and that since he did not pick up the items prior to that date, she is relieved of this obligation. We disagree.

Examining the language of the divorce decree as a whole, it is clear that the purpose of the order was for Justin to regain possession of his lawnmower, clothing, and personal effects. These items were left at the marital home, which was awarded to Precious. The divorce decree directed Precious to prepare Justin's items for pick up. The decree then set a pickup date of October 23, 2019, at 6 p.m. There is nothing in the decree mandating that the items must be picked up by Justin at that time or be lost to him forever. We, therefore, find that the divorce decree required that Precious have Justin's items prepared for pick up by the October 23 date, and that Justin be provided with an opportunity to pick them up.

Having found that the district court did not err in its interpretation of the divorce decree, we now turn to whether Justin presented sufficient evidence to find that Precious was in willful and contumacious contempt of the decree. All elements of contempt must be proved by the complainant by clear and convincing evidence. *Krejci v. Krejci*, 304 Neb. 302, 934 N.W.2d 179 (2019). Willful disobedience is an essential element of contempt. *Id.* "Willful" means the violation was committed intentionally, with knowledge that the act violated the court order. *Id.*

At the evidentiary hearing, Precious essentially admitted that she had not even attempted to sell the home after she was unable to refinance it. Justin presented evidence that he had contacted her about preparing the home for sale, but Precious refused to do so out of fear that the house would be sold at a loss. Precious explained that she too wanted to sell the house but could not because she and Justin disagreed on the distribution of any proceeds. The decree is clear on this issue. Regardless of whether the house is sold at a profit or a loss, the equity or loss was to be divided equally between the parties. Therefore, disagreement about the equity from the sale provides no excuse for Precious to disregard the order to sell the home. The district court did not abuse its discretion in finding that Precious was in willful and contumacious contempt by refusing to sell the home as ordered by the divorce decree.

Concerning Justin's belongings, other emails offered into evidence by Justin showed that he first attempted to pick up his belongings in January 2020. Justin contacted Precious regarding his items several times, but she refused to provide him a time for retrieval, claiming he had missed his deadline. At the evidentiary hearing, he informed the court that he still was not in possession of any of the items he had been awarded in the divorce decree. Precious admitted that she had disposed of all of the items except the lawnmower. Precious did not provide Justin the opportunity to regain possession of the property he was awarded in the divorce decree and then deliberately threw out those possessions. The district court did not abuse its discretion in finding Precious to be in willful contempt.

*Sanction and Purge Plan.*

Finally, Precious argues that the court's sanction of 30 days in jail is punitive because she does not have the ability to complete the purge plan designed by the court.

Civil contempt proceedings are instituted to preserve and enforce the rights of private parties to a suit when a party fails to comply with a court order made for the benefit of the opposing party. *Sickler v. Sickler*, 293 Neb. 521, 878 N.W.2d 549 (2016). Contempt proceedings may both compel obedience to orders and administer the remedies to which a court has found the parties to

be entitled. *Id.* A civil sanction is coercive and remedial; the contemnors "carry the keys of their jail cells in their own pockets" because the sentence is conditioned upon continued noncompliance and is subject to mitigation through compliance. *Id.* at 541, 878 N.W.2d at 565 (internal quotations omitted). In contrast, a criminal sanction is punitive because the sentence is determinate and unconditional. *Sickler v. Sickler, supra*.

The ability to comply with a contempt order is the dividing line between civil and criminal contempt. *Id.* A present inability to comply with a contempt order is a defense to incarceration, not a finding of contempt. *Id.* The contemnor has the burden of asserting and proving an inability to comply with the contempt order to avoid incarceration or to purge himself or herself of contempt by showing attempts to exhaust all resources. *Id.* Therefore, the contemnor must be afforded the opportunity, before being incarcerated, to demonstrate an inability to comply. *Id.*

Precious alleges she cannot comply with the purge plan ordered by the court because she cannot sell the house without the consent of Justin and she has no control over whether the house will sell by the deadline. However, Precious provided no evidence that she has made any attempts to sell the house that were thwarted by Justin. Her contention that Justin would withhold consent for the sale of the house is speculative at this juncture and not supported by the record. It was Justin who asked the court to compel Precious to sell the house. We cannot say at this point in time that he will block Precious' attempts to comply with the court's order. This argument is without merit.

Precious' argument that she cannot complete the purge plan because she has no control over whether the house can actually be sold by the deadline has more validity. At a subsequent hearing, the court could find this to be a defense to incarceration, but it is not a defense to a finding of contempt, nor is it an improper requirement as part of the purge plan. A contemnor must be afforded a chance to prove a present inability to comply with a purge plan before being incarcerated. See *Sickler v. Sickler, supra*. The district court allowed Precious this opportunity. The court ordered Precious to appear on February 4, 2022, "for a status hearing on her compliance with the purge plan." It is at this hearing that Precious would be afforded the opportunity to present evidence as to her inability to comply with the purge plan as ordered, whether that be due to market conditions, Justin's interference, or any other cause outside of her control. Because Precious still carries the keys of her own jail cell in her pocket, the purge plan is not punitive. We find no merit to this argument.

## CONCLUSION

For the reasons stated above, we affirm the decision of the district court in finding Precious in willful contempt.

AFFIRMED.